[No. B018433. Second Dist., Div. Five. Feb. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ELVIS RATLIFF, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Larry R. Pizarro, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary R. Hahn and Sharon R. Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—Following a jury trial the defendant Michael Elvis Ratliff was found guilty of robbery (Pen. Code, § 211). It was further found that a principal in the robbery was armed within the meaning of Penal Code section 12022, subdivision (a). He was sentenced to state prison for six years.

He appeals contending (1) that evidence that defendant's alibi witnesses had not volunteered their information to the police was irrelevant, highly prejudicial and infringed upon defendant's state constitutional right not to reveal his alibi witnesses to the prosecution, and (2) that he was improperly denied credit for time served after he was sentenced on an unrelated felony conviction from Ventura County.

As Mr. and Mrs. Leroy Jones left a nightclub on the corner of 120th Street and Western Avenue, at approximately 1:45 a.m. on April 6, 1985, they

noticed defendant, a light-skinned Black man with green or hazel eyes, standing a few feet away. Mrs. Jones remarked that defendant resembled her brother and Mr. Jones agreed.

A few minutes later, they got into their car and a small blue car containing two men pulled up beside them and stopped. Defendant was the driver. The passenger pulled a gun and ordered Mr. Jones out of the car. Defendant then told his partner to take Mr. Jones' wallet and jewelry. Mr. Jones was able to see the license plate of their car: 1KRA215.

When the police arrived, Mr. Jones described the car as a blue Toyota, license number 1CRA215 or 1KRA215 and described defendant as being light in complexion with hazel or green eyes. Both Mr. and Mrs. Jones identified defendant's picture in a photo lineup.

On April 3, defendant's mother rented a blue Renault Encore, license number 1KRA215. The car was returned April 8th. After his arrest, defendant acknowledged that he had control of the car at all times except for one night. On that night he had lent the car to his friend Tony. He did not know the date he lent the car to Tony, nor did he know Tony's last name, address or telephone number.

Testifying for defendant, Felice Williams, defendant's sister, stated that defendant was at a card party at her house on April 5th from 6 p.m. to 3 a.m. Mr. and Mrs. Al Canister also saw defendant at the card party during that time.

Another witness, Mrs. Jonetta Miller, testified that defendant's mother had come to visit her that evening about 8 p.m. and had stayed overnight. Defendant's mother had arrived at her house in a small blue car which remained parked in the driveway overnight behind a locked gate.

Officer Lopez observed Mr. Al Canister as he left the courtroom following his defense testimony when he faced other defense witnesses and said, "Academy Award Winner." Mr. Canister could not recall the incident.

Defendant argues that the prosecutor's cross-examination of the alibi witnesses, concerning their failure to volunteer their exculpatory information to the police prior to trial, was reversible error.

■ Contrary to defendant's argument, the prosecutor's cross-examination of Al Canister and Felice Williams was proper since it was designed to test their credibility, knowledge and recollection. (See *People* v. *Kearns* (1957) 149 Cal.App.2d 113, 123 [307 P.2d 1015]; cf. *People* v.

*Cartwright* (1980) 107 Cal.App.3d 402, 415-416 [166 Cal.Rptr. 37].) There is nothing inherently improper about cross-examining a defense witness as to his failure to come forward at an earlier date. In fact, the information discovered during this type of questioning may well aid the trier of fact in its effort to determine whether the testimony is an accurate reflection of the truth or a recent fabrication.

■ Although a citizen ordinarily has no legal obligation to offer exculpatory information to law enforcement officials, there are many situations where the natural response of a person would be to come forward in order to avoid a mistaken prosecution of a relative or friend. In that situation a witness's silence may be akin to a "prior inconsistent statement," and therefore, has probative value. (*Com.* v. *Brown* (1981) 11 Mass.App. 288 [416 N.E.2d 218, 224].)

However, there are situations where it would not be natural for a witness to offer exculpatory evidence to law enforcement officials, i.e., where they believe any disclosure would be futile; where they have been told by the defendant's attorney not to discuss the case; or where they are not aware they possess exculpatory information. Under these circumstances, the witness's failure to speak is consistent with his trial testimony. (*Ibid.*) However, the fact alternative explanations for a witness's silence may exist, does not provide an adequate ground for adopting a per se rule and excluding this type of questioning entirely. (*People* v. *Dawson* (1980) 50 N.Y.2d 311 [406 N.E.2d 771, 778, 20 A.L.R.4th 232].)

■ Thus, to ensure that a witness's pretrial silence was not a natural consequence the prosecution must lay a foundation for its relevance "by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." (*Com.* v. *Brown, supra,* 416 N.E.2d 218, 224; *People* v. *Dawson, supra,* 406 N.E.2d 771, 777, fn. 4.)

■ Here, the prosecutor laid such a foundation. During his cross-examination of Mr. Canister, he established that not only was Canister a good friend of defendant, he knew he possessed information that could help defendant weeks before the trial. In addition, the prosecutor established that defendant's sister, Felice Williams, had discussed the date of the robbery with defendant and knew she possessed exculpatory information over a month before trial. Thus, there was no error in the prosecutor attempting

to impeach defendant's alibi witnesses by showing their failure to come forward before trial and exculpate defendant.

Defendant argues, however, that even if the evidence was relevant it was "so misleading and prejudicial" that the trial court abused its discretion by allowing it to reach the jury.

■ It is the trial court's function to determine relevancy, admissibility and whether the probative value outweighs the possible prejudicial effect of evidence, and its determination will not be disturbed on appeal in the absence of a clear error of law or manifest abuse of discretion. (*People* v. *Milan* (1973) 9 Cal.3d 185, 194 [107 Cal.Rptr. 68, 507 P.2d 956].)

Here, the witnesses were able to explain their silence, either to the prosecutor or to defense counsel on redirect examination. In addition, the trier of fact could weigh the information and determine whether the witness's testimony was consistent with his prior behavior and assertions. Clearly, the trial court's ruling was proper and there was no abuse of discretion. (See *People* v. *Dawson, supra,* 406 N.E.2d 771, 778.)

■ Defendant also contends that the prosecution improperly attacked his alibi defense during final argument when he argued that he "would characterize the alibi defense . . . as a Johnny-come-lately defense. It's something that was cooked up. . . ."

However, it is within the domain of legitimate argument for a prosecutor to state his deductions or conclusions drawn from the evidence adduced at trial, and, more particularly, to relate to the jury that, in his opinion, the evidence shows that the defendant is guilty of the crime charged. (*People* v. *Prysock* (1982) 127 Cal.App.3d 972, 997 [180 Cal.Rptr. 15]; see also *People* v. *Brown* (1981) 119 Cal.App.3d 116, 133 [173 Cal.Rptr. 877].) He may also comment on the credibility of a witness in light of all the evidence presented. (*People* v. *Prysock, supra.*)

■ In any event, even if we assume that the prosecutor's question and statements during closing argument amount to prosecutorial misconduct, it cannot be said that such conduct was prejudicial. (See *People* v. *Fields* (1983) 35 Cal.3d 329, 362-363 [197 Cal.Rptr. 803, 673 P.2d 680]; *People* v. *Cartwright, supra,* 107 Cal.App.3d 402, 417.)

An examination of the record demonstrates that the evidence of defendant's guilt was overwhelming.

The eyewitness identification testimony of Leroy and Mary Jones was clear, convincing and supported by other evidence. The prosecutor's

comments could not have materially affected the verdict and any error assigned to such comments must be deemed harmless. (*People* v. *Cartwright, supra,* 107 Cal.App.3d 402, 417; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 875 S.Ct. 824, 24 A.L.R.3d 1065].)

Moreover, the jury was instructed that statements of counsel are not evidence. They were also instructed on burden, degree of proof and the presumption of innocence. We must presume the jury followed its instructions. (*People* v. *Romo* (1975) 14 Cal.3d 189, 195 [121 Cal.Rptr. 111, 534 P.2d 1015].)

Additionally, defendant contends that the trial court erred in denying him presentence credit for time served after he was sentenced on an unrelated felony conviction from Ventura County.

Defendant was taken into custody in the present case on May 24, 1985. On October 17, 1985, he was sentenced to state prison on a charge from Ventura County. At the December 20, 1985, sentencing hearing in this case, he was sentenced to state prison, the term to run concurrently with the term imposed in Ventura County. The court gave defendant credit for time served from the date of arrest until the date he was sentenced in Ventura County. No credit was given for the 64 days (Oct. 17 to Dec. 20) served between the date of sentencing in Ventura County and the sentencing hearing in this case.

Under *People* v. *Schaaf* (1983) 150 Cal.App.3d 45 [197 Cal.Rptr. 458], defendant is entitled to the additional 64 days credit.

The judgment is modified to provide that defendant shall receive additional presentence actual time and conduct credits for the period from October 17, 1985 to December 20, 1985. The trial court is directed to prepare an amended abstract of judgment which reflects that modification and forward a certified copy of same to the appropriate authorities. As so modified, the judgment is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.