[No. D022697. Fourth Dist., Div. One. Sept. 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY JOHN TAUBER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion part B.

## COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—Appellant Anthony John Tauber was convicted of stalking within the meaning of Penal Code[2] section 646.9, subdivision (b), and of 11 counts of disobeying a protective court order in violation of section 273.6, subdivisions (a), (c) and (d). He appeals, arguing the trial court erred by allowing the impeachment of defense witnesses with their failure to promptly report exculpatory evidence and in including certain expenses in the order of restitution.

---

[2]All further statutory references are to the Penal Code.

## FACTS

### A. Prosecution Case

Martha Lawrence and appellant began living together in 1990 and later became engaged to be married. However, at the beginning of 1992, Lawrence discovered appellant was using drugs and told him to move out of her apartment. He did so but began calling her repeatedly at home and at work.

In February 1992, Lawrence returned home and found appellant in her apartment. When she told him to leave, he refused and assaulted and choked her. After appellant left, Lawrence called the police and subsequently obtained a restraining order. The order became effective on March 9, 1992.

Over the next several years, appellant constantly harassed Lawrence at home and at work. He called her repeatedly, speaking to her or leaving messages in abusive and offensive language. On several occasions appellant appeared at Lawrence's apartment and attempted to gain entry. Appellant left messages painted on the windows of her car and on the driveway at both her home and workplace. In December 1992 appellant was convicted of violating the restraining order.

For a time after the conviction, appellant's harassing behavior stopped. However, in November 1993 his offensive and threatening conduct began anew. Appellant called Lawrence, her coworkers, her mother and her therapist, using offensive language and making threats. Appellant on one occasion left a latex vagina taped to the door handle of Lawrence's car with a note, stating "Obsessive love, obsessive art."

Appellant was arrested on February 16, 1994, and the present prosecution followed.

### B. Defense Case

In early 1992, appellant moved in with Monica Crouch, the mother of his child, and her boyfriend Christopher Arnacar. In February 1992, Crouch received at least four telephone calls from Lawrence seeking to speak with appellant. In March 1992, Lawrence came to Crouch's home and spent the night in appellant's room with him. Crouch could hear the pair engaging in sex. Crouch also recalled a time in June or July 1992 when Lawrence and appellant played racquetball together.

Christopher Arnacar also testified Lawrence came to the home and spent the night with appellant in March 1992. Arnacar also stated Lawrence

returned in May to have appellant work on her car, and on one occasion in July she spent most of the night with appellant. Arnacar stated on three occasions he spoke to Lawrence on the telephone when she called to speak to appellant.

Appellant's father operated a beauty salon where appellant worked. He testified in February 1992 he received 15 to 20 calls from Lawrence asking for appellant. He believed Lawrence continued to call throughout 1992. He saw Lawrence visit appellant three to five times between February and December 1992. Lawrence called the shop several times between January 1, 1993, and June 1, 1993.

A clinical psychologist examined appellant and found he suffered from an organic brain disorder, was dependent on various drugs and suffered from erotomania (a delusional belief that Lawrence loved him).

## DISCUSSION

### A. *Impeachment of Defense Witnesses*

Appellant notes the prosecution was allowed, over objection, to impeach Monica Crouch, Christopher Arnacar and appellant's father by asking them on cross-examination why, if they were aware of facts that tended to demonstrate appellant's innocence, they had not made these facts known to the police or the prosecution before trial. Appellant argues it was error to allow such impeachment since the prosecution failed to lay a foundation for the evidence as required by *People* v. *Ratliff* (1987) 189 Cal.App.3d 696 [234 Cal.Rptr. 502] (*Ratliff*).

### 1. *Background*

During cross-examination Lawrence denied calling or going to the residence of Monica Crouch after the hearing on the restraining order in July 1992. She also denied sleeping there with appellant. Lawrence also denied calling the hair salon belonging to appellant's father in an attempt to talk to appellant between December 1992 and March 1993. She further denied trying to reach him there from April to July 1993.

On cross-examination, Crouch stated she had heard about the charges for which appellant was on trial in March or April 1994 and was present at appellant's arraignment in April 1994. The trial was held in August 1994. She stated she had been interviewed by appellant's investigator in the spring of 1994. Crouch also stated she was aware appellant had been convicted in

December 1992 of violating a restraining order related to Lawrence. When asked if she had gone to any law enforcement authorities with information concerning Lawrence contacting or attempting to contact appellant, she stated the matter had nothing to do with her. In addition, while she knew appellant had been arrested for something related to Lawrence she did not know exactly what it involved. Crouch also stated she did not recall telling the defense investigator about Lawrence's contacts with appellant. She explained he had not asked.

Appellant's father operated the beauty salon where appellant worked. He testified that in February 1992 he received 15 to 20 calls from Lawrence asking for appellant. He believed Lawrence continued to call throughout 1992. He saw Lawrence visit appellant three to five times between February and December 1992. Lawrence called the shop several times between January 1, 1993, and June 1, 1993.

Although his answers were not entirely clear, it appears that on cross-examination appellant's father stated he was aware his son had been convicted in December 1992 of violating a restraining order. He stated he was aware Lawrence had contacted appellant throughout 1992. He testified he did not relate this fact to the authorities because he was unaware he should do so. He stated he knew his son had been arrested and incarcerated for the present charges in February 1994. He stated that while he was aware Lawrence had attempted to contact his son throughout 1993 and 1994, he did not relate this fact to the police or the district attorney because he did not know how important that fact was.

Christopher Arnacar also testified Lawrence came to the home and spent the night with appellant in March 1992. Arnacar also stated Lawrence returned in May 1992 to have appellant work on her car, and on one occasion in July she spent most of the night with appellant. Arnacar stated that on three occasions he spoke to Lawrence on the telephone when she called to speak to appellant.

On cross-examination Arnacar stated he first learned of the present charges against appellant several weeks before his testimony but was aware appellant had been arrested in February on charges related to Lawrence He was also aware appellant had been convicted of violating a restraining order in December 1992. When asked why he had not told the authorities in 1992 about Lawrence's contacts with appellant, he stated he had no reason to do so. He also stated that while he was aware appellant had been arrested for contacting Lawrence he did not come forward with his information that Lawrence had been contacting appellant. Arnacar stated he did not see a problem he could do anything about.

## 2. Discussion

In *Ratliff, supra*, 189 Cal.App.3d at pages 700 through 701, the court concluded while a citizen has no legal obligation to come forward at an early date with exculpatory information, there are many situations where in order to avoid mistaken incarceration or prosecution it would be natural to do so. The court stated under such circumstances silence is akin to a prior inconsistent statement relevant to whether testimony is a reflection of the truth or a recent fabrication and thus, admissible on the issue of credibility. (*Ibid.*)

The court also noted, however, there are situations where it would not be natural for a witness to come forward. The witness might believe it is futile to offer the exculpatory information or might be unaware the information was exculpatory. The court stated: "Thus, to ensure that a witness's pretrial silence was not a natural consequence[,] the prosecution must lay a foundation for its relevance 'by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so.' [Citations.].)"[3]

In *People v. Price* (1991) 1 Cal.4th 324, 429-430 [3 Cal.Rptr.2d 106, 821 P.2d 610] (*Price*), and *People v. Santos* (1990) 222 Cal.App.3d 723, 736-737 [271 Cal.Rptr. 811] (*Santos*), the courts agreed with *Ratliff* that evidence of a witness's failure to come forward with exculpatory evidence before trial was generally admissible. (See also 3A Wigmore, Evidence (Chadbourn ed. 1970) § 1042, p. 1056 et seq.) Each questioned, however, whether the required foundational factors listed by *Ratliff* were truly foundational or merely matters going to the weight of the evidence. In neither case was the court required to resolve the issue.

■ We agree with *Price*, *Santos* and *Ratliff* that the fact a witness is aware of the potentially exculpatory nature of facts but fails to reveal that evidence to the authorities before trial is relevant to the witness's credibility. While there may be no legal obligation to come forward, it is so natural to do

---

[3]While jurisdictions differ concerning the admissibility of prior silence evidence to impeach, most courts allow such impeachment when it would have been natural for the witness to have disclosed the matter at an earlier time. (Annot., Impeachment of Defense Witness in Criminal Case by Showing Witness' Prior Silence or Failure or Refusal to Testify (1983) 20 A.L.R.4th 245.)

so that the failure to promptly present that evidence makes suspect its later presentation at trial.[4]

It appears, however, that *Ratliff* makes the admission of such impeaching evidence dependent on the satisfaction of the foundational criteria cited in the opinion. In light of California's strong constitutional policy requiring the admission of relevant evidence, we think the *Ratliff* foundational criteria too restrictive.

Article I, section 28, subdivision (d) of the California Constitution states: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding." The section retains specific rules of exclusion that with the exception of the Evidence Code sections are not applicable here.[5]

■ The effect of the enactment of California Constitution, article I, section 28, subdivision (d), was to repeal all statutory and nonstatutory rules restricting the admission of relevant evidence except those specially preserved by that enactment. (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1081-1082 [255 Cal.Rptr. 352, 767 P.2d 619].)

■ Evidence Code section 210 defines relevant evidence as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

It has been said that "This definition of relevant evidence is manifestly broad. Evidence is relevant when no matter how weak it tends to prove a disputed issue. [Citation.]" (*In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843 [40 Cal.Rptr.2d 85].) While we agree, we state the obvious and note that the tendency of evidence to prove a fact is variable, ranging from direct evidence that if believed conclusively proves a fact to circumstantial evidence whose tendency to prove a fact is so limited that it has no logical probative force in establishing the fact. (See 1 McCormick on Evidence (4th ed. 1992) § 185, p. 773 et seq.)

---

[4]Retired Justice Bernard Jefferson in his California Evidence Benchbook takes a contrary view. He essentially states a witness's failure to come forward to the authorities before trial with exculpatory evidence has no probative force since it is doubtful a witness would believe that presenting such evidence to the authorities would affect the decision to prosecute. Justice Jefferson states the only reasonable place for a prospective witness to report the exculpatory evidence is to the defendant. (2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar Supp. 1990) §§ 28.1, 28.9, pp. 312-314, 343-346.)

[5]In addition, Evidence Code section 351 states: "Except as otherwise provided by statute, all relevant evidence is admissible."

■ Applying these concepts of relevance and admissibility to impeachment with evidence of pretrial silence, it is our view such evidence becomes relevant when the witness was aware before trial of information that he understood tended to exculpate one who had been charged with a crime. If there is substantial evidence such that a trier of fact could so find, then the failure to report the information before trial is relevant and admissible subject to a prejudice evaluation pursuant to Evidence Code section 352.

■ The determination of whether evidence tends even weakly to prove a disputed fact or lacks even that degree of probative force is a matter placed in the discretion of the trial court. (*People* v. *Kelly* (1992) 1 Cal.4th 495, 523 [3 Cal.Rptr.2d 677, 822 P.2d 385].) ■ In the present case a trier of fact could reasonably conclude that Crouch, Arcanar and appellant's father all were aware of the circumstances of the relationship between appellant and Lawrence, and that each knew appellant had in the past been convicted of crimes based on making contact with Lawrence and knew that in this case there were similar criminal charges. In this case each knew appellant was incarcerated and faced conviction and imprisonment. It would be reasonable to conclude that each witness, whatever his or her precise knowledge of the elements of the charged crimes, was aware he or she had information that tended to negate Lawrence's claims, was important to the defense and which might exculpate appellant. The trial court properly admitted evidence of their failure to present those facts to the authorities prior to trial.

B.   *Restitution**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The matter is remanded for a modification, if necessary, of the restitution award; in all other respects the judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 1997. Mosk, J., Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.

---

*See footnote 1, *ante*, page 518.