STATE of Missouri, Respondent,

v.

Nelson E. HOPKINS, Appellant.

No. WD 52815.

Missouri Court of Appeals,
Western District.

June 30, 1997.

James C. Cox, Assistant Appellate Defender, Kansas City, for appellant,

Jeremiah W. (Jay) Nixon, Attorney General, Kurt U. Schaefer, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Nelson Hopkins was convicted of three counts of robbery in the first degree, § 569.020, RSMo 1994, and three counts of armed criminal action, § 571.015, RSMo 1994. Mr. Hopkins was sentenced as a prior offender to fifteen years imprisonment for each count. §§ 558.016, 557.036.4 and 558.019. The sentences are to run concurrently. Mr. Hopkins claims that the trial court committed two errors of law when it: (1) permitted the state to cross examine him about not calling alibi witnesses and failed to prohibit the prosecutor in closing argument from arguing anadverse inference; and (2) denied his motion to sever the robbery and armed criminal action counts.

The judgment of convictions is affirmed.

## STATEMENT OF FACTS

Two armed males entered the Hardee's restaurant located at 6323 Independence Avenue, Kansas City, Missouri, at about 10:45 p.m. on August 29, 1994, waiving guns and demanding that everyone "get down on the floor." One of the employees attempted to run to the door but was prevented by one of assailants who cocked a .9 millimeter pistol and pushed her to the floor. Another employee, who was lying on the floor behind the counter, was forced by the other male assailant to open the safe and empty the money drawers. The two men fled with the restaurant's money.

Three armed men entered the Kentucky Fried Chicken restaurant located at 7200 Eastwood Trafficway, Kansas City, Missouri, at about 7:30 p.m. on September 21, 1994. One man fired a round into the ceiling while the remaining two men jumped over the counter and ordered everyone to lie on the floor. The man who fired his weapon ordered an employee to open her cash register and give him the money within the drawer.

The employee was unable to open the register, and another employee intervened and successfully opened the register. The gunman also ordered the employee who opened the cash register to get the money from the restaurant's safe. The three men left with the money.

Four armed men entered the Burger King restaurant located at 9494 Blue Ridge, Kansas City, Missouri, at about 7:30 p.m. on October 24, 1994. One of the armed men, wearing a hobo mask, jumped over the counter and put his gun to the head of an employee. The gunman ordered the employee to the office and directed him to open the safe. Another gunman jumped the counter and put a gun to the head of another restaurant employee and ordered her to open all the cash registers.

While this robbery was occurring, a husband and wife noticed the robbery from their car. The couple found a pay phone and called police. The couple also followed the robbers' car when it left the robbery scene. The couple, a police car, and a police helicopter, continued to follow the "getaway" car until it suddenly stopped and four males left the vehicle running. The police apprehended four men at various locations all generally within a block and a half of where the car stopped. Those individuals included Mr. Hopkins, Tyrone Williams, Mark Bell, and Javon Turner. Police discovered a .9 millimeter handgun in the vicinity of where police officers within the helicopter said three of the men were huddled. The car in which the men were riding was loaned to Mr. Hopkins by his uncle and contained a hobo mask, money, a pellet gun, and a Burger King bank bag. Three traffic tickets issued to Mr. Hopkins and his checkbook were also found in the car.

Police conducted a ballistic test on the recovered handgun and concluded that the bullet fired into the ceiling during the robbery of the Kentucky Fried Chicken restaurant was fired from the handgun. Various restaurant employees who were present during the robbery identified Mr. Hopkins as one of the robbers. An employee of Hardee's restaurant, present when the restaurant was robbed August 29, 1994, identified Mr. Hopkins and Mr. Turner as the two gunmen who robbed the restaurant. An employee of the Kentucky Fried Chicken restaurant identified Mr. Hopkins and Mr. Turner as two of the men who robbed that restaurant on September 21, 1994. Another employee of the same restaurant identified Mr. Turner as the man who forced her to open the cash registers during that robbery. An employee of the Burger King restaurant identified Mr. Hopkins's voice as the voice of one of the robbers who robbed that restaurant October 24, 1994. Another employee of the same restaurant also identified Mr. Hopkins's voice, and Mr. Turner was identified as a participant in the robbery.

Mr. Hopkins offered an alibi defense to all of the robbery charges, alleging that he was with other people when the robberies occurred. Mr. Hopkins was convicted of three counts of robbery and three counts of armed criminal action, and he appealed.

## I. THE TRIAL COURT DID NOT ERR IN ALLOWING THE STATE TO CROSSEXAMINE MR. HOPKINS ABOUT HIS FAILURE TO CALL ALIBI WITNESSES IN SUPPORT OF HIS ALIBI DEFENSE

■ Mr. Hopkins's first point of error concerns the state's cross-examining him regarding his failure to call alibi witnesses with whom he claimed to have been with when at least two of the robberies occurred.[1] Mr. Hopkins claims that the state's crossexamination impermissibly placed upon him the task of disproving a presumption that the alibi witnesses would testify against him if called. The state contends it was entitled to ask Mr. Hopkins about alibi witnesses he did not call to testify because he created the reasonable expectation that they would testify favorably for him.

1. An alibi is "[a] defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for [defendant] to be the guilty party." BLACK'S LAW DICTIONARY 66 (5th ed.1979) (citing Com. v. Warrington, 230 Pa.Super. 332, 326 A.2d 427 (1974)).

Mr. Hopkins failed to object to the prosecutor's inquiries on cross-examination about where the two people were with whom he claimed to have been with August 29, 1994, the day of the Hardee restaurant robbery. He also failed to object when the state argued the adverse inference for the witnesses' failure to testify. Failure to object preserves nothing for appellate review. Rule 30.20; *State v. McMillin,* 783 S.W.2d 82, 95 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990).

■ Mr. Hopkins objected when the prosecutor cross-examined him about the September 21, 1994 robbery of the Kentucky Fried Chicken restaurant. The prosecutor inquired about "several people" whom Mr. Hopkins claimed to have seen at his place of employment while he worked when the restaurant was robbed. Mr. Hopkins objected to the line of questioning charging that the prosecution was "shifting the burden of proof." Mr. Hopkins alleges on appeal that the objection was made to the adverse inference being made by the prosecution. An argument advancing an adverse inference does not shift the burden to the accused. *State v. Bostic,* 789 S.W.2d 804, 809 (Mo.App. 1990). Therefore, Mr. Hopkins's objection, based on a "shifting of the burden" theory rather than an "adverse inference" theory, cannot be enlarged on appeal. *State v. Macon,* 845 S.W.2d 695, 696 (Mo.App.1993). Even giving Mr. Hopkins the benefit of review under plain error, his argument nevertheless fails.

A prosecutor's argument must be "plainly unwarranted" and found to have had a decisive prejudicial effect on the jury's verdict against the defendant in order to find an abuse of trial court discretion in allowing the adverse inference. *State v. Moore,* 620 S.W.2d 370 (Mo. banc 1981); *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc 1980), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

■ The state's arguing an adverse inference in closing argument because a defendant failed to call a specific witness to testify is improper, generally. *State v. Crump,* 875 S.W.2d 241, 242 (Mo.App.1994); *State v. Poe,* 721 S.W.2d 180, 181 (Mo.App.1986). An exception to this general "missing witness rule" arises when a defendant fails to call a "peculiarly available" witness reasonably expected to testify in the defendant's favor. *Graves v. U.S.,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) ("the rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable");. *State v. Neil,* 869 S.W.2d 734, 739 (Mo.1994); *State v. Reese,* 860 S.W.2d 848, 850 (Mo.App.1993); *But see Herbert v. Wal–Mart Stores, Inc.,* 911 F.2d 1044 (5th Cir.1990)(uncalled witness rule has no place in federal trials employing the Federal Rule of Evidence). The categorization of a witness is determined by: (1) one party's superior ability to know or identify the witness; (2) the nature of the testimony expected to be given by the witness; and (3) a relationship between a party and the witness which indicates a likelihood that the witness would testify more favorably for one party than the other. *State v. Anderson,* 867 S.W.2d 571, 576 (Mo.App.1993). This test assumes that the witness has knowledge of facts and circumstances "vital to the case." *Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 702 (Mo. banc 1990).

Mr. Hopkins defended the charges by asserting an alibi defense to each. He testified that the day he was released from incarceration by the state of Kansas, the date of the first charged robbery, his friend, Jeffery Green, drove him from the penal institution while Mr. Green was "still on the clock" for his employer. Mr. Hopkins contended that he, Mr. Green, and Mr. Green's wife were together the entire night either eating dinner, shopping for clothes, or within North Kansas City. The prosecutor, on cross examination, without objection, asked Mr. Hopkins why, if the Greens could unequivocally place him with them the night of the robbery, did he not call them as witnesses. Mr. Hopkins responded that his attorney contacted them but that he did not know why they were not present. The prosecutor then queried Mr. Hopkins asking, "They are not here because you weren't with them that night, were you?"

Mr. Hopkins also testified on direct examination that on the evening of the second robbery, September 21, he was at work at the Golden Ox Restaurant employed as a security and maintenance person. He testified that he clocked in at about 6:00 p.m. and did not leave until 6:00 a.m. the following morning. Mr. Hopkins testified that he saw "a number of people" employed at the Golden Ox restaurant while he was at work. His time card was introduced as evidence at trial. His employer testified that Mr. Hopkins worked alone and was able to leave the premises undetected. The employer also testified that Mr. Hopkins had been discovered absent from the restaurant at different times while on duty and was eventually fired for doing so. The prosecutor asked Mr. Hopkins why the numerous people whom he allegedly saw at the restaurant on the night of the September 21th robbery did not testify at trial. Mr. Hopkins explained that they were not called because he didn't know them personally. The prosecutor then asked Mr. Hopkins, "So there is really no one—we're not going to know where you were that night except what you say; is that right?" After this question, defense counsel asked to approach the bench and objected to the line of questioning. The trial court overruled the objection.

Mr. Hopkins testified that on October 24th he was in the area of 72nd and Prospect where he was arrested. He said that he had taken a metro bus to find an old girlfriend. He also testified that his car, which he had gotten from his uncle, had broken down earlier in the day and had been left at the home of his cousin, Tamika Ames, hours before his arrest. The prosecutor asked Mr. Hopkins why Ms. Ames did not testify about the event to which he replied that he thought she was out of town. The prosecutor asked, "All the people you saw each and every one of these occasions, none of those people are here in court to say a word about where you were. The only person in court to say where you where is you?" Defense counsel did not object.

In closing argument the state initially did not mention Mr. Hopkins's alibi or his failure

to call any of his alibi witnesses. Defense counsel raised the issue of Mr. Hopkins's alibi in her closing argument. The prosecutor, in her rebuttal, countered defense arguments about the alibi, telling the jury that the persons referred to by Mr. Hopkins were not called to testify because they would not substantiate Mr. Hopkins's alibi.

Alibi witnesses are considered inherently key witnesses to a criminal trial. *See e.g.* Rules 25.05(A)(2) and (5)(require the defendant, on written request of the state, to disclose if he intends to rely on the defense of alibi and the names and addresses of persons he intends to call in support). Alibi witnesses are presumed to help the accused, and exclusion of an alibi witness is, therefore, not favored. *State v. Massey,* 867 S.W.2d 266, 268 (Mo.App.1993). An example of their importance is demonstrated in courts generally allowing alibi witnesses to be impeached on their failure to inform the police of their exculpatory information. *See e.g. State v. Patterson,* 598 S.W.2d 483, 489 (Mo.App. 1980); *People v. Tauber,* 49 Cal.App.4th 518, 524, 56 Cal.Rptr.2d 656 (Cal.App.1996); *People v. Willoughby,* 250 Ill.App.3d 699, 719, 189 Ill.Dec. 649, 664, 620 N.E.2d 617, 632 (Ill.App.1993); *State v. Ghere,* 201 Conn. 289, 304, 513 A.2d 1226, 1235 (1986); Milton Roberts, Annotation, *Impeachment of Defense Witness in Criminal Case by Showing Witness' Prior Silence or Failure or Refusal to Testify,* 20 A.L.R.4th 245, 267–77 (1983).

Witnesses are sometimes unavailable to defendants who wish to call them as witnesses. If a witness is truly beyond a party's ability to subpoena or otherwise obtain the person of the witness to testify at trial, no basis for inferring that the defendant was afraid to call the witness exists, and no basis exists for implying that the witness's testimony would be unfavorable. If the presence of the alibi witness at trial can reasonably be expected, however, reasons why the witness was not called may be implied to the jury. *State v. Ivory,* 609 S.W.2d 217 (Mo.App.1980) ("Missing witness" instruction proper even though defendant's alibi witnesses, who were family members, were located out of state).[2]

---

**2.** No "missing witness" instruction was provided   to the jury instructing the jury that the absence of

Mr. Hopkins's testimony disclosed that witnesses were available to him whose evidence would have exculpated him. He failed to call such witnesses. The list of witnesses included family, friends, and co-workers. Although apparently available, Mr. Hopkins failed to support his defense with available alibi witness testimony. Mr. Hopkins created the reasonable expectation that the alibi witnesses about whom he had testified being with when the charged robberies occurred would testify favorably. He offered incomplete or no explanations for the witnesses' absence, and the jury was entitled to disbelieve his reasons for their absence and to infer that they would not exculpate him if he called them.

Mr. Hopkins also claims that even if the prosecutor was permitted to comment on his failure to call the alibi witnesses on grounds that he created a reasonable expectation they would testify for him, he argues that the state is nevertheless prohibited from drawing a negative inference if the alibi witnesses' testimony would have been culminative as to his testimony. A party cannot draw a negative inference from the opposition's failure to call a witness whose testimony would only be cumulative to other evidence already adduced by the calling party. *State v. Smith*, 735 S.W.2d 41, 44 (Mo.App.1987).

No evidence by way of depositions exists to demonstrate that the testimony of the witnesses would have been duplicative or cumulative. *See e.g. Id.* (court had evidence of depositions which indicated that the testimony of the witnesses would be duplicative). Mr. Hopkins, by inference, is claiming the trial court should have made a prospective determination that the testimony of the alibi witnesses would have been favorably duplicitous based on Mr. Hopkins's sole allegation. Mr. Hopkins's position would require this court to engage in sheer speculation as to what the testimony of any of the prospective alibi witnesses would have been absent deposition testimony. To ask a reviewing court to

evaluate witness testimony entered in the record and compare it to other evidence is quite different from asking a trial court—or the reviewing court—to determine that a witness's testimony would have been cumulative had the witness testified based solely on the criminal defendant's assertion as to what that testimony would be. No competent evidence exists in the record to determine what the testimony of the alibi witnesses would have been. Mr. Hopkins's hearsay assertion that the alibi witnesses' testimony would have been duplicitous does not make it so.

An adverse inference was properly argued by the state and it did not shift the burden to the accused. *State v. Bostic*, 789 S.W.2d 804, 809 (Mo.App.1990). The trial court did not err in allowing the state to argue a negative inference from Mr. Hopkins's failure to call the alibi witnesses. Point one is denied.

## II. THE TRIAL COURT DID NOT ERR IN REFUSING TO SEVER THE ROBBERY AND ARMED CRIMINAL ACTION COUNTS

Mr. Hopkins claims as his final assertion of error that the trial court's failure to sever the charges caused him to be prejudiced because the jury could not distinguish the evidence and apply the law to each charged offense. Joinder of offenses is a question of law while severance lies within the discretion of the trial court. *State v. Langston*, 889 S.W.2d 93, 96 (Mo.App.1994); *State v. Tobias*, 873 S.W.2d 650, 653 (Mo.App.1994).

### A. JOINDER OF THE OFFENSES WAS PROPER

Courts are encouraged to "liberally join criminal charges in order to promote judicial economy." *State v. Howton*, 890 S.W.2d 740, 744 (Mo.App.1995). Two or more charges may be joined in one indictment or information if the offenses are of the "same or similar character." Rule 23.05; *To-*

---

testimony of the missing alibi witnesses could be considered by the jury together with all the other evidence in the case in determining the guilt or innocence of the defendant. Additionally, at trial the defense did not request an alibi instruction, and the trial court did not give one in the form of

MAI–CR 3d 308.04. "It has been uniformly held that, lacking a request for such special instructions, no error was committed by the failure to give them" *U.S. v. Boyd*, 17 M.J. 562, 563 (A.F.C.M.R.1983); *State v. Long*, 925 S.W.2d 220, 223 (Mo.App.1996).

*bias*, 873 S.W.2d at 653. A showing that each crime consisted of similar tactics, which resemble or correspond in nature, is sufficient to join the charges. *Howton*, 890 S.W.2d at 744; *State v. Olds*, 831 S.W.2d 713, 718 (Mo.App.1992). The offenses or tactics need not be identical in every detail. *Tobias*, 873 S.W.2d at 653; *State v. Vinson*, 834 S.W.2d 824, 827 (Mo.App.1992).

■ The evidence shows that all the robberies were of fast food restaurants, in the evening hours, with men armed with .9 millimeter weapons who jumped over the food counters, demanded that the employees empty the safe and registers, and ordered everyone to lie on the floor. The bullet recovered from the ceiling of an earlier charged robbery matched the weapon recovered from the last charged robbery. The evidence showed that the same persons were likely to have committed all charged offenses. *State v. Meder*, 870 S.W.2d 824 (1993). The trial court did not err in joining the offenses.

### B. SEVERANCE OF THE OFFENSES WAS NOT REQUIRED

■ Mr. Hopkins claims that even if the offenses were properly joined, the trial court abused its discretion in refusing to sever the offenses. A trial court's denial of a motion to sever will not be reversed absent an abuse of the trial court's discretion and a clear showing of prejudice. *Vinson*, 834 S.W.2d at 827. Prejudice is shown through evaluating the number of charges, the complexity of the evidence, and whether the jury could distinguish the evidence pertaining to each charge and apply the law appropriately to each offense. *Id.*; *Langston*, 889 S.W.2d at 96. The trial transcript discloses that the evidence was not complex and that the testimony was presented in chronological order and easily understandable. The trial court did not abuse its discretion in refusing to sever the offenses.

Point two is denied.

The judgment of convictions is affirmed.

All concur.