# United States Court of Appeals
## For the First Circuit

---

No. 00-2275

UNITED STATES OF AMERICA,

Appellee,

v.

KENNETH VAN HORN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadaro, U.S. District Judge]

---

Before

Torruella and Lipez, Circuit Judges,
and Zobel,[*] District Judge.

---

Bjorn Lange, Assistant Federal Public Defender, for appellant.
Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for appellee.

---

[*] Of the District of Massachusetts, sitting by designation.

January 14, 2002

**LIPEZ, Circuit Judge**.  Kenneth Van Horn was convicted of being a felon in possession of explosives, in violation of 18 U.S.C. § 842(i)(1).  On appeal, Van Horn challenges his conviction on two grounds.  First, Van Horn argues that the evidence presented at trial fails to demonstrate his knowing possession of explosives as required under § 842(i)(1) and is thus insufficient to support his conviction.  Second, he asserts that the trial judge erroneously admitted evidence of details of Van Horn's prior uncharged misconduct relating to his involvement in a burglary of an explosives depot in 1993.  Rejecting these arguments, we affirm.

**I.**

**A.  Factual Background**

We recite the evidence in the light most favorable to the verdict.  See United States v. Escobar de Jesus, 187 F.3d 148, 157 (1st Cir. 1999).  As part of a cooperation agreement with the police department of Manchester, New Hampshire, Richard Moore began assisting law enforcement officers in September 1998 in a number of criminal investigations involving the illegal distribution of crack cocaine, firearms and explosives.  The Manchester Crime Line paid Moore for information on various

-2-

criminal transactions and individuals, including Van Horn. Moore advised Manchester Police Detective Kevin Barry that he had reason to believe that Van Horn would commit a burglary at an explosives storage depot in Bow, New Hampshire.

Consequently, under Detective Barry's supervision, Moore met with Van Horn and recorded several conversations with him as part of a "sting" operation to sell explosive devices to Van Horn. In the course of these taped conversations, Van Horn explained to Moore that he wanted to obtain explosives from the Bow explosives depot to blow up the vehicles and apartments of two of his ex-girlfriends. On September 21, 1998, Detective Barry learned from Moore that Van Horn was planning to burglarize the Bow depot on the following night. Van Horn subsequently postponed the planned burglary to September 23.

In the meantime, upon surveying the depot, Detective Barry and Special Agent Ernie Yerrington had safety concerns that prompted them to present Van Horn with the option of purchasing explosives in an effort to divert Van Horn from the Bow facility. Wearing a body wire, Moore met with Van Horn and told him that he wanted to introduce him to someone who could sell him explosives directly so he would not need to burglarize the Bow explosives depot. During this recorded conversation, Van Horn broached the subject of purchasing hand grenades by

saying, "maybe [your supplier] can get grenades. . . . You know what I mean. Grenades, you know missile launchers, that kind of sh- so I can be like a hundred f-ing miles away. . . ." Van Horn explained that he could get explosives from his work sites, but that getting the cap, the detonator, was a problem "[c]ause that's legally considered a firearm." Van Horn further acknowledged other efforts he had made to obtain and create adequate explosives.

On September 24, Moore met Van Horn again, and Van Horn expressed interest in meeting Moore's "friend" (Detective Barry) who was selling explosives. Van Horn said he was interested in buying $100 worth of explosives. The next day, Moore wore a body wire during a conversation with Van Horn. Van Horn is recorded as saying specifically that he wanted to buy "pineapples," a certain type of grenade. Van Horn made it clear that he could get boxes of dynamite on his own from his job sites, and that the only reason he would meet with Moore's friend was to buy hand grenades or rocket launchers. Moore left the decision up to Van Horn as to whether to meet this individual.

On September 28, after Van Horn again expressed interest in meeting Moore's friend, Detective Barry (wearing a body wire) and Moore met Van Horn at his apartment. Detective

Barry introduced himself to Van Horn as "Kevin" and expressed his concern about the risks of driving around with grenades and other explosives.  Van Horn replied, "You're talking to, . . . an individual who has been in a certain business for 17 years, okay, and only got nailed once, you know."

Detective Barry then offered to sell Van Horn dynamite sticks, and Van Horn declined, expressing a preference for "baseballs," a type of hand grenade.  Van Horn gave Detective Barry an unsolicited payment of forty (40) dollars toward the purchase of several hand grenades.  They discussed other types of explosives called balloons or sausages and Van Horn said he could get those himself.

On September 30, Moore informed Detective Barry that Van Horn had asked when the grenades would be ready to pick up. In a recorded conversation, Detective Barry arranged with Van Horn to meet at Applebee's Restaurant in Manchester and told Van Horn that he could look at the explosives to see if they were what he wanted.  Van Horn replied, "I don't have to look at nothing, you, it's kind of a trust thing.  You burn me once and then, you know, we deal with it the . . . other way, you know what I'm saying."

Detective Barry and Moore drove to the restaurant, carrying a drywall bucket in the backseat which contained two

hand grenades, known as a pineapple and a baseball (which were manufactured by the New Hampshire State Police Explosives Unit) and two dynamite sticks.[2] Van Horn parked his truck out of view, and walked over to the restaurant.  Detective Barry drove alongside Van Horn and stopped for him to get in.  As instructed, Moore pulled the front passenger seat on the two-door sedan forward, so that Van Horn would sit in the back seat. Detective Barry told Van Horn, "I got ya one baseball, one pineapple, and the guy was nice enough to throw in a . . . couple of sticks if you want to get some caps for 'em.  Sound like a good deal?"  Van Horn responded, "Deal."  Van Horn handed Detective Barry the remaining sixty (60) dollars, and when Detective Barry invited Van Horn to take a look at the explosives, Van Horn said, "Don't worry about it . . . .  I've been dealing with it for a long time."  At that point, Van Horn and Moore were both arrested.  The Manchester Police Department later released Moore once Van Horn was prosecuted.

---

[2]  On September 30, 1998, Trooper John Meany, of the New Hampshire State Police Explosives Unit, provided a pineapple style Mark II military fragmentation hand grenade and a military baseball hand grenade M-33, both of which had dummy fuses and contained gunpowder and plastic explosive, respectively, which were manufactured outside the State of New Hampshire.  He also provided several sticks of dynamite without detonators, which were manufactured in Joplin, Missouri.

During a subsequent search of Van Horn's bedroom, officers found a set of keys located in a chest of drawers. One of the officers was involved in an ongoing investigation of a burglary in 1993 of the Bow explosives depot and recognized the manufacturer's name on the keys, American Lock Company, as the type of padlock used by the depot on their explosives magazines. The depot site manager located padlocks still possessed by the Bow explosives depot which had key codes matching the keys seized from Van Horn's bedroom.

## B. Jury Trial Proceedings

A federal grand jury returned a two-count indictment charging Van Horn with 1) unlawful receipt of explosives, in violation of 18 U.S.C. § 844(d), and 2) being a felon in possession of explosives, in violation of 18 U.S.C. § 842(i)(1).

At trial, Van Horn's counsel alerted the jury to the defense of entrapment in his opening statement:  "If the judge instructs you on entrapment, then you must find that the government has proven that, one, Kenny Van Horn was predisposed into [sic] committing this crime, and two, Kenny Van Horn was not induced by government agents."

In the government's case, Moore testified that Van Horn told him he wanted to obtain explosives from the Bow explosives

depot in order to blow up the vehicles and apartments of his ex-girlfriends. Moore testified that he and Van Horn previously went to that depot in 1993. At that point, Van Horn objected to any further testimony from Moore about what transpired at the Bow explosives depot during that time. The government informed the judge that Moore was going to testify that he and Van Horn burglarized the depot, stealing keys from the depot office and using them to steal explosives stored in containers at the depot. Noting defense counsel's reference to the entrapment defense in his opening statement, the district court informed Van Horn that, if he pursued an entrapment defense, the court would admit evidence of Van Horn's involvement in the 1993 Bow depot burglary as relevant to his predisposition to commit the crime. If, on the other hand, Van Horn chose not to pursue an entrapment defense, the district court stated that the evidence would be inadmissible under Fed. R. Evid. 404(b).[3]

Uncertain whether Van Horn's evidence would warrant an entrapment instruction, the court allowed Moore to testify on direct only as to 1) Van Horn's possession of the keys to the Bow explosives depot padlocks, and 2) the fact that Van Horn and

---

[3] The government informed the district judge at sidebar that, pursuant to the notice provisions of Rule 404(b), the government had disclosed to defendant well in advance of trial its intention to admit in evidence this prior bad act.

Moore had visited the depot in 1993. The court instructed the prosecution to reserve for re-direct any reference to the 1993 Bow depot burglary itself, with the scope of its inquiry about that incident contingent upon the extent to which Van Horn's counsel raised entrapment during Moore's cross-examination. Consistent with the court's directive, Moore identified the keys to the depot seized by law enforcement from Van Horn's bedroom and testified that he saw Van Horn in possession of these keys in 1993 and again in the summer of 1998. Moore testified that, on September 21, 1998, Van Horn said that he was going to the depot to make sure the keys still fit.

On cross-examination, Moore testified that he had called and visited Van Horn many times during August and September 1998, and that Moore had first raised the idea of Van Horn purchasing explosives. At this point, Judge Barbadaro did not deem the evidence sufficient to merit an entrapment instruction and accordingly directed the prosecution not to inquire of Moore on redirect as to the details of the 1993 Bow depot burglary.

At the close of the prosecution's case, Van Horn requested a judgment of acquittal under Fed. R. Crim. P. 29, on the grounds that the government failed to prove, inter alia, that Van Horn possessed the explosives. The court denied the

motion, ruling that "possession can be satisfied either by proof of constructive possession or joint possession, and the evidence produced is amply sufficient to support a finding that the defendant possessed the explosives."

Van Horn then took the stand to testify on his own behalf. Prior to Van Horn doing so, the trial court advised him that if he testified on the subject of the 1993 Bow depot burglary, the prosecution would be free to question him about his involvement in that burglary. Van Horn testified that Moore had tried to persuade him to commit numerous crimes, generally residential and commercial burglaries. Van Horn also said that he had seen Moore use dynamite. He conceded that the keys found on his dresser drawer after his arrest were the keys to the Bow explosives depot, and admitted that he and Moore "were involved in that back in '93 or '94." However, he said that the keys had come from Moore. Van Horn also acknowledged that he was convicted of committing a burglary in January, 1988.

On cross-examination, the prosecutor elicited from Van Horn details about his involvement in the 1993 Bow depot burglary, and Van Horn started correcting him by giving details of the offense. Van Horn did not object to this line of questioning. At this point, the trial judge gave the jury the following limiting instruction:

You have heard testimony in this case about a burglary of the Bow explosives depot. . . . [Y]ou cannot consider that evidence except for the limited reasons that I'm going to instruct you on now. . . . If you determine that this defendant was involved in a burglary of the Bow Depot, explosives depot, and that one of the purposes of that burglary was to acquire explosives, then you may consider that to the extent you find it helpful in evaluating whether the defendant had a predisposition to commit the offenses with which he is currently charged. Predisposition is relevant for a limited purpose. The defendant has raised the defense of entrapment in this case. And whether he was predisposed to commit the crime or not is a matter that you may consider in evaluating the defendant's claim that he was entrapped.

At the close of all the evidence, Van Horn failed to renew his Rule 29 motion. In closing argument, the prosecutor only referred to the keys seized from Van Horn's bedroom: "He can get all the dynamite he wants. Defendant's bedroom, night of his arrest."

The trial court included in the jury charge an entrapment instruction,[4] specifically instructing the jury to determine "whether the defendant was predisposed to commit the charged crime." In addition, the judge instructed on actual and constructive possession, as well as sole and joint possession.

The jury acquitted Van Horn on the first count, but convicted him on Count Two for being a felon in possession of

_____

[4] Although the judge had initially decided not the charge the jury on entrapment, he later changed his mind. He ruled that, notwithstanding "weak" supporting evidence, he would instruct on entrapment "out of an abundance of caution."

explosives.  The judge sentenced Van Horn in January 2000 to 72 months in prison, followed by three years of supervised release.

## II.

Van Horn challenges on appeal the sufficiency of the evidence to establish his possession of explosives as required under § 842(i)(1).  He also claims that the trial judge erred in admitting evidence of the 1993 Bow depot burglary.

### A.  Sufficiency of Evidence of Possession

To convict Van Horn under § 842(i)(1), the government had to prove beyond a reasonable doubt that Van Horn was a convicted felon who knowingly possessed explosives shipped through interstate commerce.[5]  Van Horn argues on appeal that the evidence was insufficient to prove the requisite element of possession.[6]

---

[5]  Section 842(i) provides in relevant part:

(i) It shall be unlawful for any person . . .  (1) . . . convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive or possess any explosive which has been shipped or transported in interstate or foreign commerce.

[6]  Van Horn does not dispute the sufficiency of evidence on the remaining two elements required under § 842(i)(1).  Van Horn admitted at trial to his 1988 felony burglary conviction.  As to the element that the explosives be shipped through interstate commerce, Trooper Meany testified that the grenades were both manufactured outside the State of New Hampshire, and the dynamite was manufactured in Missouri.

To challenge the sufficiency of evidence after a conviction, the defendant must have preserved his Rule 29 motion by moving for an acquittal at the close of the defense's evidence at trial. United States v. Stein, 233 F.3d 6, 20 (1st Cir. 2000). While Van Horn moved for acquittal under Fed. R. Crim. P. 29 at the close of the prosecution's evidence, he failed to renew his Rule 29 motion at the close of his case in defense. Absent such renewal, Van Horn's objection is deemed forfeited and Van Horn must now demonstrate "clear and gross injustice" to prevail on his sufficiency challenge before us. United States v. Concemi, 957 F.2d 942, 950 (1st Cir. 1992)(internal quotation marks omitted); Stein, 233 F.3d at 20.

In considering the evidence at trial, we view the facts and draw all reasonable inferences in favor of the verdict. See United States v. Baldyga, 233 F.3d 674, 678 (1st Cir. 2000). Our appellate role here is limited. See United States v. Woodward, 149 F.3d 46, 56 (1st Cir. 1998)("The court of appeals neither weighs the credibility of the witnesses nor attempts to assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence."). Upon careful review, we conclude that, viewed in the light most favorable to the verdict, the evidence is sufficient to satisfy

the knowing possession element of § 842(i)(1) and therefore there was no clear and gross injustice in Van Horn's conviction.

Van Horn asserts that the government failed to prove that he possessed the explosives which Detective Barry and Moore brought to their meeting with Van Horn in the Applebee's parking lot on September 30, 1998. Under settled law, "possession may be actual or constructive, sole or joint." United States v. Vargas, 945 F.2d 426, 428 (1st Cir. 1991)(internal citations omitted). Constructive possession is sufficient to establish the element of possession under § 842(i)(1). Cf. United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992) (constructive possession found to satisfy knowing possession element under 18 U.S.C. § 922(g)(1)). "'Constructive' possession is commonly defined as the power and intention to exercise control, or dominion and control, over an object not in one's 'actual' possession,"[7] United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994); United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir. 1992) ("Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or

---

[7] Indeed, the district court so instructed the jury on possession. In addition, the jury was instructed that "[a] person acts knowingly when he acts voluntarily and intentionally and not by mistake or accident."

-14-

through others."), and may be established through the use of either direct or circumstantial evidence. See United States v. Georgacarakos, 988 F.2d 1289, 1296 (1st Cir. 1993); Wight, 968 F.2d at 1395.

In the instant case, a jury could reasonably conclude from the evidence at trial that Van Horn had both the power and intention to exercise control over the explosives in the bucket. As to intention, the record is replete with evidence of Van Horn's plan and design to exercise control over the explosives, from the moment Van Horn told Moore he wanted explosives to blow up his girlfriends to the point at which Van Horn sat in the back seat of the car with the explosives next to him.

Van Horn's primary argument is that the government failed to demonstrate that he had the power to exercise dominion and control over the explosives in the bucket. We disagree. The evidence clearly establishes that Van Horn "could have taken actual possession" of the explosives and thus satisfies the element of "power" required for constructive possession. United States v. Lamare, 711 F.2d 3, 5 (1st Cir. 1983)(constructive possession of firearm "conclusively established" where defendant "could have taken actual possession" of pistol). Van Horn sat immediately adjacent to the bucket of explosives in the back seat of the car with Moore and Detective Barry sitting in front.

He was free to reach into the bucket to physically handle the explosives. Indeed, Detective Barry, upon receiving the sixty (60) dollar payment from Van Horn, told Van Horn to inspect the explosives in the bucket: "I got you one baseball, one pineapple, and the guy was nice enough to throw in a couple of sticks [of dynamite] if you want to get some caps for them. Sound like a good deal? . . . Hey . . . pop [the bucket] up and take a look. Make sure." From the above evidence, a reasonable juror could infer that Van Horn, however briefly, had the power to exercise control over the explosives in the bucket.

The fact that the presence of Moore and Detective Barry made it virtually impossible for Van Horn to escape with the explosives is beside the point and does not alter the analysis. See Zavala Maldonaldo, 23 F.3d at 8 ("The completion of the crime does not require that the defendant have a sporting chance [of escaping law enforcement]."). It is well established that possession does not necessarily require that the defendant have the ability to escape with the contraband. See Santiago v. United States, 889 F.2d 371, 376-77 (1st Cir. 1989)(finding possession where drugs had been turned over to defendants, notwithstanding presence of government agents both inside and outside room where transaction took place); United States v. Martorano, 709 F.2d 863, 869-71 (3d Cir. 1983)(holding that

-16-

constructive possession where informant gave defendant keys to van containing marijuana was not negated by presence of law enforcement who had no intention of letting van be driven away); United States v. Toro, 840 F.2d 1221, 1237-38 (5th Cir. 1988)(noting possession did not require an opportunity to escape with contraband where defendant took actual possession of cocaine from undercover agent shortly before defendant was arrested). That the government had no intention of letting Van Horn escape with the explosives does not preclude Van Horn's constructive possession of such contraband. See United States v. Damsky, 740 F.2d 134, 139 (2d Cir. 1984)(defendant found to be in constructive possession upon receipt of keys to camper containing hashish, notwithstanding fact that government had no intention to let him depart); see also United States v. Toner, 728 F.2d 115, 128 (2d Cir. 1984)(similar holding to Damsky in context of illegal possession of firearms).

Furthermore, to the extent that Van Horn argues that he could not have possessed the explosives because he did not have sole access to the bucket, that argument lacks merit. Exclusive access is not a prerequisite to possession; indeed, "joint possession" was one of the possibilities mentioned in the trial judge's charge to the jury. See Zavala Maldonado, 23 F.3d at 6-7. Therefore, there was ample evidence from which the jury

-17-

could have reasonably inferred that Van Horn had the power and intention to exercise dominion or control over the bucket of explosives sufficient to establish possession.

## B.  Evidence of 1993 Bow Depot Burglary

Van Horn argues that evidence of the details of the 1993 Bow depot burglary, to which he testified on cross-examination, was unduly prejudicial and should not have been admitted under Rule 403 balancing.[8]

We typically review the district court's decision to admit evidence under Rule 404(b) for abuse of discretion, and will reverse the district court's balancing under Rule 403 "only in exceptional circumstances."  United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996)(internal quotation marks omitted). See United States v. Shea, 159 F.3d 37, 40 (1st Cir. 1998) (noting that only "extraordinarily compelling circumstances" warrant reversal of trial court's "on-the-spot" balancing under Rule 403)(internal quotation marks omitted).  The government, however, asserts that because defense counsel failed to make a timely objection specifically to the challenged evidence during Van Horn's cross-examination, the more stringent plain error

---

[8] Van Horn does not appear to contest the admission of evidence of his possession of keys to the depot as he concedes that such evidence "was certainly probative of his independent disposition to possess explosives."

-18-

standard applies.  See Baldyga, 233 F.3d at 681.  We need not address whether Van Horn made the proper objections at trial sufficient to preserve this evidentiary issue on appeal.  Even under the more lenient abuse of discretion standard, Van Horn cannot prevail.

Fed. R. Evid. 404(b) provides that evidence of a defendant's prior bad acts is not admissible to prove his or her "criminal character or propensity to commit similar crimes."[9] United States v. Houle, 237 F.3d 71, 77 (1st Cir. 2001); see United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000). We apply a two-pronged test in reviewing Rule 404(b) evidentiary rulings.  First, to overcome the "absolute bar" of Fed.R.Evid. 404(b), the evidence must be "specially probative of an issue in the case -- such as intent or knowledge -- without including bad character or propensity as a necessary link in the inferential chain."  United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996)(internal quotation marks omitted).  We assess probative value in light of the remoteness in time of the other

---

[9]  Rule 404(b) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

act and the degree of similarity to the crime charged.  Id.
However, in situations where the defendant employs entrapment as
a defense to criminal liability, prior bad acts relevant to a
defendant's predisposition to commit a crime are highly
probative and can overcome the Rule 404(b) bar.[10]  See Houle, 237
F.3d at 78; United States v. Mazza, 792 F.2d 1210, 1223 (1st
Cir. 1986)(evidence of prior drug transaction relevant to refute
defendant's claim of entrapment).

Even if the proffered evidence has "special relevance,"
however, it may not be admitted if, under the second prong of
the Rule 404(b) analysis, its probative value is "substantially
outweighed by the danger of . . . unfair prejudice, confusion of
the issues, or misleading the jury."  Frankhauser, 80 F.3d at
648 (quoting Fed. R. Evid. 403)(internal quotation marks
omitted).  Van Horn concedes that his possession of keys to the
Bow explosives depot was highly probative of his independent
predisposition to possess explosives.  However, he complains
that the details of the 1993 burglary which the prosecutor
elicited from Van Horn on cross were unduly prejudicial.
Specifically, Van Horn argues that his testimony on cross-

_____

[10]  The defense of entrapment has two related elements: 1)
improper government inducement to commit the crime and 2) lack
of predisposition on the part of the defendant. See United
States v. Joost, 92 F.3d 7, 12 (1st Cir. 1996); United States v.
Gendron, 18 F.3d 955, 961 (1st Cir. 1994).

examination about his "repeated violations of private space" would repulse and impair the objectivity of any law-abiding juror.  This testimony included the following:

Q:          Did [Moore] do anything with those keys while you were at the Bow depot?

Van Horn:   We tried them on two trailers.  There's a trailer that had the computer and stuff in it, then there's two trailers with the tools, like crowbars and all that stuff there, and then there's another trailer with a bunch of copper wire and boxes in it. And those are the trailers he tried.  We tried . . . .

Q:          You and Mr. Moore both used the keys he had that night to try to –

Van Horn:   I believe I tried one of the compartments and he tried the other.

Q:          What were you looking for?

Van Horn:   Anything to sell.

Q:          Like explosives?

Van Horn:   No, sir.

Q:          Did you talk about what might be in there before you tried the keys?

Van Horn:   No, sir.
            . . . .
Q:          You just walked over and you tried the keys.

Van Horn:   You don't – in the situation like this there was no talking because of being afraid of a security guard or something so you don't talk.

Q:          Oh. So you and Mr. Moore did not want to be caught.

Van Horn:   You could say that, yes.

-21-

As demonstrated above, the prosecutor directed his line of questioning to establish 1) the extent of Van Horn's involvement in the 1993 Bow depot burglary and 2) whether Van Horn was looking for explosives in that burglary. These details bear strongly upon Van Horn's predisposition to possess explosives in this case. In response, Van Horn volunteered details about that burglary without objection from defense counsel in an apparent effort to discredit the government's theory that he was looking for explosives in the 1993 burglary, and thereby undermine the probative value of that prior misconduct as to his predisposition to possess explosives in the instant charged offense.

Where predisposition is at issue because of the entrapment defense, "'it really is the underlying conduct, perhaps more than the conviction itself, which becomes a material issue concerning the previous offense.'" United States v. Reed, 977 F.2d 14, 16 (1st Cir. 1992)(quoting trial judge in that case). The underlying conduct could be even more important, we note, where no conviction exists. That is, in the absence of a conviction, it may be important that details of the misconduct be presented to the fact finder to make the incident meaningful to the predisposition issue. Indeed, the details

-22-

here strongly bear upon the jury's consideration of the extent to which the 1993 Bow depot burglary is probative of Van Horn's predisposition to possess explosives in the case on trial. See id. at 17 (allowing evidence as to details surrounding prior conviction for cocaine possession where such details "tended to clarify for the jury the extent to which the prior conviction might or might not be probative of [defendant's] predisposition to distribute cocaine"); Houle, 237 F.3d at 78 (admitting evidence of defendant's prior act probative of defendant's criminal knowledge and intent to traffic in drugs). Exclusion of such evidence would enable Van Horn to claim entrapment but preclude the government from demonstrating that Van Horn's "'criminal conduct was due to his own readiness and not to the persuasion'" of the government. Houle, 237 F.3d at 78 (quoting Sherman v. United States, 356 U.S. 369, 376 (1958)). Finally, to the extent Van Horn argues the 1993 incident was too remote in time to the events in 1998, we reject that argument, particularly in light of the keys discovered in Van Horn's bedroom linking the 1993 Bow depot burglary to the charged offense. See United States v. Bastanipour, 41 F.3d 1178, 1183 (7th Cir. 1994) (affirming admissibility of twelve-year-old narcotics conviction in heroin conspiracy trial as relevant to predisposition to commit drug conspiracy).

Accordingly, we find no error under Fed. R. Evid. 404(b). The evidence was not offered for any purpose that is impermissible under that rule and was relevant to show Van Horn's predisposition to commit the crime alleged in the present case. Nor do we see any error in the trial court's determination pursuant to Rule 403 that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. The evidence was not unduly inflammatory. Moreover, the district court minimized any risk of unfair prejudice by carefully circumscribing with a limiting instruction the jury's use of the evidence of Van Horn's prior misconduct. Nothing in the record remotely suggests a "basis to suppose that the jurors disregarded the trial judge's [limiting instruction] and departed on a frolic of their own." United States v. Pierro, 32 F.3d 611, 616 (1st Cir. 1994).

Van Horn was forewarned that if he chose to assert an entrapment defense, the details of the 1993 burglary would become admissible. Because we find no error in the district court's ruling, Van Horn must now accept the consequences of his decision.

**Affirmed.**