**UNITED STATES, Appellee,**

v.

**Luis MERCADO, Defendant, Appellant.**

**No. 04–1656.**

United States Court of Appeals, First Circuit.

Heard Feb. 9, 2005.

Decided June 16, 2005.

244

Christopher R. Goddu, with whom Edward C. Roy, Jr. and the Federal Defender's Office were on brief, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Peter F. Neronha, Assistant United States Attorney, were on brief, for appellee.

Before LIPEZ, Circuit Judge, STAHL, Senior Circuit Judge, and

OBERDORFER,* Senior District Judge.

LIPEZ, Circuit Judge.

Following a two-day trial, a jury convicted defendant Luis Mercado of being a felon in possession of a firearm, 18 U.S.C. § 922(g). The district court sentenced him to 120 months in prison and three years of supervised release under the then-mandatory United States Sentencing Guidelines. He now appeals his conviction, assigning error to the cross-examination of a defense witness regarding her delay in coming forward with allegedly exculpatory information, and to the district court's refusal to instruct the jury on "fleeting" possession. For the first time on appeal, Mercado also challenges his sentence under *United States v. Booker*, — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Finding these claims unavailing, we affirm.

## I.

"Because this appeal follows a conviction, we recite the facts in the light most favorable to the verdict." *United States v. Medina–Martinez*, 396 F.3d 1, 3 (1st Cir. 2005).

On the night of February 14, 2003, two plainclothes police officers on patrol drove by 7 Bodell Avenue, part of the Hartford housing project in Providence, Rhode Island. The officers, Detective Oscar Perez and Officer Thomas Zincone, observed a black Buick and a red Chevy Astro van parked side by side in the parking lot in front of the building, with a group of eight to ten men in and around the vehicles. Perez and Zincone pulled into the well-lit parking lot and got out of their car to investigate. Perez saw Mercado standing between the Buick and the van with a chrome-colored gun in his hand. Perez

alerted Zincone to the gun, then yelled "Police," and told Mercado to drop the gun. Rather than complying, Mercado reached through the open door of the van for a leather jacket and tried to stuff the gun into the jacket's pocket. When Perez started to approach Mercado, however, Mercado fled, dropping the gun and the jacket. Perez then picked up the gun for safekeeping while Zincone pursued Mercado, catching him within a few feet of the van. After a brief struggle, the officers arrested Mercado and took him into custody.

Once Mercado was in custody, Perez checked the gun—a .22–caliber semiautomatic pistol—and determined that it was loaded with nine rounds of ammunition. Perez also recovered the jacket into which Mercado had attempted to put the gun. In one of the jacket pockets, the officers found paperwork bearing Mercado's name.

A grand jury indicted Mercado on one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e). To be convicted under § 922(g), a defendant (1) must have previously been convicted of a crime punishable by a term of imprisonment exceeding one year, and (2) have knowingly and intentionally possessed, (3) in and affecting commerce, (4) a firearm. Mercado stipulated to elements (1),(3), and (4)—namely, that he had a prior felony conviction, and that the semiautomatic pistol recovered at the scene had moved in or affected interstate commerce and was a firearm. The only issue at trial was therefore whether Mercado had possessed the firearm.

During the two-day jury trial, officers Zincone and Perez testified to the events described above for the prosecution. Mercado then presented a mistaken-identity defense, relying on two witnesses, Vinisis

---

* Of the District of Columbia, sitting by designation.

Acosta and Rolando Rojas. Rojas was one of the men in the parking lot when the police arrived and Acosta, Mercado's ex-girlfriend of five years, lived at 7 Bodell Avenue in an apartment overlooking the parking lot. They testified that the police arrested Mercado because they found his name in the jacket, not because he had been holding a gun.

After less than a day of deliberation, the jury returned a guilty verdict. The district court then sentenced Mercado under the then-mandatory Guidelines to 120 months in prison, the statutory cap, followed by three years of supervised release.

## II.

### A. Cross-examination of Acosta

Acosta testified on direct examination that the police initially arrested an unidentified man, and handcuffed Mercado only after they found his name in the jacket and asked which of the men present was Luis Mercado. She also testified that when Officer Perez called her the following day to ask if she had any information about the incident, she falsely told him that she did not because she was afraid of the police. On cross-examination, the prosecutor established that Acosta had dated Mercado for approximately five years, that she still cared about him, and that she remained in regular contact with him after his arrest. The prosecution then attempted to impeach Acosta by asking why she had not come forward earlier with exculpatory information about her ex-boyfriend, for whom she still cared:

Q: You didn't go downstairs to say, "Hey, what are you arresting him for?"

A: No.

Q: And you didn't place any phone calls to Providence PD that night to see what your ex-boyfriend of five years had

been arrested for and to see what was going on with him either, did you?

A: No.

. . . .

Q: Ma'am, at some point you knew that the state was [also] bringing charges against the Defendant arising from what happened on February 14, 2003?

. . . .

A: Yes.

. . . .

Q: And you knew that there were proceedings going on in state court arising from what happened on February 14, 2003, correct?

. . . .

A: Yes.

Q: And you knew what those hearings [in state court] were about. They were about, were they not, the police's claim that [Mercado] had a gun on February 14, 2003?

A: Yes.

Q: And you didn't call anyone at the Attorney General's Office and offer to tell them what you saw you saw on the night of February 14, 2003, correct?

A: No.

Q: And you learned at some point that the federal government had brought charges against the Defendant alleging that he had a gun on February 14, 2003?

. . . .

A: Yes.

Q: And you didn't call any federal agent, the Bureau of Alcohol, Tobacco & Firearms, and let them know what it is you say you saw on February 14, 2003, did you?

A: No.

Q: And you didn't call anyone at the U.S. Attorney's Office to tell them what you saw either, did you?

A: No.

The Government also returned to this theme in its closing argument, asking the jury to consider why a witness with exculpatory information about someone she cared for would wait nine months to come forward.

Mercado timely objected to the questions about state charges on the ground that the "[o]ther charges are irrelevant. They're irrelevant and prejudicial." The court asked what the state charge was, and the Government responded that

[i]t's the same charge. [The] point is that we know that in the state charge of possessing this gun ... there were bail hearings, there were violation hearings. I don't intend to get into the nature of those hearings, but my point is that this is a woman who could come forward and say something and presumably doesn't do it in various court proceedings over various months .... So if you have this information, why aren't you coming forward? It's clearly relevant in this incident.

The court then overruled Mercado's objection and allowed the questioning on state charges, so long as the Government clarified that both charges arose from the same incident. Before closing arguments, the court gave a limiting instruction to the jury on the use of this testimony, emphasizing that the state charges and proceedings were only relevant to "action or inaction by Ms. Acosta" and should have "absolutely no bearing on the determination you make in this case."

Mercado now mounts two challenges based on the Acosta cross-examination. First, he alleges prosecutorial misconduct in the government's representation that there had been bail and violation hearings in connection with the state court charges, claiming that there were no such proceedings at which Acosta could have testified. Second, Mercado asserts that the references to state charges were impermissible under Federal Rule of Evidence 403. We consider these arguments in turn.

### 1. Prosecutorial misconduct

██ Although Mercado objected to the references to state charges and proceedings at trial, his objections were not based on the prosecutorial misconduct claim he raises on appeal. "It is well established that an objection on one ground does not preserve appellate review of a different ground." *Negron v. Caleb Brett U.S.A., Inc.*, 212 F.3d 666, 672 (1st Cir.2000). Our review is therefore only for plain error. *See United States v. Moran*, 393 F.3d 1, 15 (1st Cir.2004). To prevail under this standard, Mercado must show that "(1) an error occurred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Medina–Martinez*, 396 F.3d at 8.

Mercado assigns error to the prosecutor's representation that there had been bail and violation hearings on the related state charges. He contends that the state court's docket demonstrates that there were no such hearings at which Acosta could have testified, and that the prosecutor therefore could have no good-faith basis for asserting otherwise. Although the state court's docket is not part of the record in this case, Mercado urges us to take judicial notice of it, emphasizing that courts are "entitled to take notice of the records of relevant court proceedings." *United States v. Florentino*, 385 F.3d 60, 65 (1st Cir.2004), *vacated on other grounds*, —— U.S. ——, 125 S.Ct. 2531, —— L.Ed.2d —— (2005).

██ We agree that we can take judicial notice of the state court records. As the Government points out, however, the dock-

et entries that Mercado relies on are less than illuminating on the contention that no hearings occurred. These entries indicate that violation hearings relating to the state charges were scheduled and rescheduled numerous times, without specifying whether these hearings ever took place. Yet the Government points to other docket entries suggesting that there may have been bail hearings related to the state charges. In light of these uncertainties, we find that the state court's docket entries are inconclusive on the point for which Mercado cites them.

■ In any event, regardless of whether there was a state proceeding at which Acosta could have testified, there was no plain error here. Mercado's argument that he was prejudiced by the references to ongoing state proceedings assumes that the district court would not have allowed questions relating to the state court charges but for the prosecutor's representation that there had been violation and bail hearings connected to those charges where Acosta could have testified to help Mercado. There is no evidence to support that position.

The prosecutor's cross-examination was designed to impeach Acosta by showing that she was aware of the pending state charges and yet took no steps to share with state authorities the exculpatory version of events that she presented in the federal trial. In ruling on Mercado's objection to any reference to the state charges, the court sought to verify that the state and federal charges stemmed from the same incident. It presumably did so because if the state charges did not relate to the February 14 incident, Acosta would have no reason to tell state authorities what she saw on that night and the line of questioning would be irrelevant. The prosecutor explained that both the federal and state possession charges were based on the February 14 incident, and Mercado did not contend otherwise. The court therefore allowed references to the state charges, with the caveat that the Government had to "clarify that they're the same charges as this." Nothing in the record suggests that the court would have reached a different decision about the appropriateness of the cross-examination absent the prosecutor's statement that there had been bail and violation hearings on the state charges. Irrespective of any such hearings where she might have testified, Acosta would have still had an incentive to share with state authorities her exculpatory information about Mercado. There was thus no prejudice from the prosecutor's allusion to bail and violation hearings.

### 2. Rule 403

■ Mercado also asserts that references to the state court charges were prejudicial and irrelevant, and therefore should not have been permitted. Because this objection was preserved at trial, we review the court's evidentiary decision for an abuse of discretion. *United States v. Perez–Ruiz*, 353 F.3d 1, 10 (1st Cir.2003). This is a deferential standard: "[O]nly rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *United States v. Perrotta*, 289 F.3d 155, 166 (1st Cir.2002) (alteration in original) (internal quotation marks omitted).

Federal Rule of Evidence 403 provides that,

[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence. Mercado argues that the state charges were irrelevant to Acosta's testimony and unfairly prejudicial. We disagree on both counts.

Other courts have approved of impeachment techniques similar to the one used here, *see, e.g., United States v. Carr,* 584 F.2d 612, 618 (2d Cir.1978) (questioning a defense witness about his failure to come forward with exculpatory evidence before trial was proper); *People v. Tauber,* 49 Cal.App.4th 518, 56 Cal.Rptr.2d 656, 660 (1996) ("[T]he fact a witness is aware of the potentially exculpatory nature of facts but fails to reveal that evidence to the authorities before trial is relevant to the witness's credibility."). Where it is natural to come forward with exculpatory information, "the failure to promptly present that evidence makes suspect its later presentation at trial." *Id.*

That logic applies here. The prosecutor established that Acosta had been Mercado's girlfriend for five years, that she remained in contact with him after his arrest, and that she still cared for him. While Acosta could—and did—attempt to explain to the jury why she did not volunteer her testimony in the context of the state charges, her failure to come forward with allegedly exculpatory information makes it less probable that she in fact had such information. References to the state charges were therefore relevant. *See* Fed. R.Evid. 401 (evidence is relevant if it makes a fact of consequence "more probable or less probable than it would be without the evidence").

Of course, there could be a good explanation for this silence. On direct examination, Acosta testified that she lied to Officer Perez when he called to interview her the day after Mercado's arrest because "I was afraid of the police .... I don't know

if he might be able to take any reprisal against me, so I did not tell him what I had seen." Acosta elaborated during the cross-examination, citing an incident in which a woman "was killed because she was going to be a witness." She continued, "you never know what can happen if you say that what somebody else is saying is not true. You are running a risk." As this explanation demonstrates, there may well be situations where a witness in Acosta's position would have reason to be wary of stepping forward. *Cf. Commonwealth v. Brown,* 11 Mass.App.Ct. 288, 416 N.E.2d 218, 224 (1981) ("Some individuals ... may believe that the disclosure of their information to the police would be futile."). It is therefore critical that a witness facing this kind of cross-examination have an opportunity to explain on the stand a delay in volunteering exculpatory evidence. Acosta had such an opportunity in this case.

Mercado also argues that the repeated references to state charges were unfairly prejudicial because the jury may have inferred that if both state and federal officials decided to prosecute for the same conduct, the charges must be meritorious. We see little danger that this reasoning colored the jury's verdict. The Government alluded to the state charges solely in the context of questioning Acosta's credibility; it never suggested that the state proceedings validated the federal charges. Moreover, the court expressly instructed the jury on this point at the close of Acosta's testimony:

> [Y]ou heard reference to certain state charges that had been brought and certain proceedings with respect to those charges that had been brought as against Mr. Mercado. I instruct you that you may consider that information only insofar as it relates to what Ms. Acosta testified she did or did not do with respect to ... the testimony ...

that she has presented here in this court proceeding. Further, you should take no significance and should not consider the fact that state charges may have been brought as an indication as to what your verdict should be in this case. That, as I say, is a separate matter and has absolutely no bearing on the determination that you make in this case. As I say, it is relevant only insofar as it may relate to action or inaction by Ms. Acosta.

This instruction directly refutes Mercado's assertion that "the district court did not address the taint inherent in mentioning the fact that two different government entities had charged defendant with the same crime." The court indicated not only that the pending state charges were relevant solely to Acosta's credibility, but also that the state charges had no bearing on the merits of the federal case. Reinforcing this point, the court also reminded the jury—albeit in the context of the federal charges—that an indictment does not "lead to an inference of guilt."

The court's instructions adequately addressed any prejudice that may have resulted from repeated references to the state charges.[1] *See United States v. Van Horn*, 277 F.3d 48, 58 (1st Cir.2002). "Nothing in the record remotely suggests a basis to suppose that the jurors disregarded the trial judge's [limiting instruction] and departed on a frolic of their own." *Id.* at 58–59 (alteration in original) (internal quotation marks omitted). Mercado's Rule 403 claim therefore fails.[2]

## B. Jury instructions

At trial, Mercado sought the following jury instruction on momentary or fleeting possession:

> In order to convict the defendant, you must be satisfied that the Government has proven beyond a reasonable doubt that he knowingly possessed the firearm in question. An act is done "knowingly" if it is done voluntarily and intentionally, not because of mistake or accident. If you find that the defendant possessed the firearm charged in the indictment momentarily, and not voluntarily or intentionally, you must acquit the defendant of the charge of possession of a firearm by a convicted felon.

Over Mercado's objection, the district court declined to give the requested instruction, concluding that it was not proper "given the testimony surrounding Mr. Mercado's alleged possession of the firearm." Instead, the court instructed the jury that

> [t]he word "possess" means to exercise authority, dominion, or control over

---

1. By emphasizing that the government referred to the state charges or proceedings eight times during the cross-examination and during its closing argument, Mercado implies that sheer repetition contributed to the prejudicial impact of the references. Given Acosta's opportunity to explain her failure to come forward and the district court's limiting instruction, however, there was no undue prejudice from the repeated references to the state court proceedings.

2. Mercado also argues that "the court should have limited the prejudice by requiring the prosecutor to eliminate all references to a parallel state court proceeding and to speak in general terms of 'an earlier opportunity to present testimony.' " Because Mercado offers this suggestion for the first time on appeal, our review is only for plain error. There was no error in the district court failing to endorse a solution that was never offered to it. Moreover, as discussed in the context of our Rule 403 analysis, Mercado was not prejudiced by the government's references to state court proceedings. It logically follows that Mercado also was not prejudiced by the district court's failure to instruct the prosecutor to refer generally to "an earlier opportunity to present testimony."

something.... The law recognizes different kinds of possession. It may be actual or constructive. Possession is considered to be actual when a person knowingly has direct physical control or authority over something at a given time. Possession is called constructive when a person, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over something, whether directly or through another person.

. . .

The term "knowingly" ... means that [the defendant] was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

This passage encompassed the first two sentences of Mercado's requested instruction. Mercado faults it, however, for omitting a statement that fleeting or momentary possession does not constitute possession for purposes of 18 U.S.C. § 922(g).

■■■ We review *de novo* a preserved objection to the court's refusal to give a requested jury instruction. *See Sanchez–Lopez v. Fuentes–Pujols*, 375 F.3d 121, 133 (1st Cir.2004). "[T]he district court's 'refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.'" *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.*, 295 F.3d 68, 76 (1st Cir.2002) (quoting *United States v. DeStefano*, 59 F.3d 1, 2 (1st Cir.1995)).

■■■ Mercado cannot establish that the requested instruction was correct as a matter of law. Contrary to Mercado's assertions, momentary or fleeting possession may constitute possession for purposes of § 922(g). We recently considered this issue for the first time in *United States v. Teemer*, 394 F.3d 59 (1st Cir.2005). As in the instant case, the district court in *Teemer* refused to give an instruction on fleeting possession. We affirmed, concluding that

> [t]he district court was correct not to give this proposed instruction. It could easily exculpate a bank robber who, after the robbery and on request, picked up another bank robber's gun from the table and handed it to him. There are plenty of other situations in which holding a weapon, even briefly ..., would nonetheless be unacceptable for a former felon. Indeed, a number of our cases say, in the context of both guns and drugs, that the briefest moment of possession may be enough for a conviction.

*Id.* at 63. Even if the evidence established only that Mercado held the firearm for a few seconds, he could properly be convicted of possession within the meaning of § 922(g).[3] *See id.* at 65 (noting that a jury was entitled to find that the defendant violated § 922(g) even if he only held a gun long enough to move it out of his way). Because "brevity alone does not preclude conviction," *id.* at 63, an instruction that seeks to make brevity controlling is "overbroad, and therefore incorrect," *id.* at 63–64.

Citing *United States v. Mason*, 233 F.3d 619 (D.C.Cir.2000), Mercado maintains

---

**3.** Of course, as the district court instructed the jury, the possession must have been knowing to violate § 922(g). *See, e.g., United States v. Liranzo*, 385 F.3d 66, 69 n. 2 (1st Cir.2004) ("Section 922(g)(1) requires the government to prove that the defendant was a convicted felon who knowingly possessed a firearm in or affecting interstate commerce.").

that there must be a fleeting possession defense to a charge under § 922(g) because, otherwise, a felon could be punished for innocent contact with a gun. His reliance on *Mason* is misplaced. In that case, the D.C. Circuit recognized an "innocent possession" defense that can be invoked only where the record reveals that "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory." *Id.* at 624. We declined to adopt this innocent possession defense in *Teemer, see* 394 F.3d at 64–65, and we do not reconsider it here.

Moreover, even if we did recognize the defense described in *Mason,* it would not apply to the facts of this case. The defendant in *Mason* testified that he happened upon a loaded gun during the course of his job as a deliveryman. He further testified that he picked up the gun for safekeeping, unloaded it, and proceeded to his next delivery stop (the Library of Congress), where he intended to turn the gun over to a police officer he knew. 233 F.3d at 621. The record in *Mason* therefore supported a finding that the firearm was attained innocently. The record here, by contrast, supports no such finding. Witnesses placed Mercado in a parking lot late at night holding a semiautomatic weapon that later turned out to contain nine rounds of ammunition. Such behavior, to put it mildly, is "risky business for an ex-felon." *Teemer,* 394 F.3d at 65. The court instructed the jury that it could convict Mercado if he had knowingly "exercise[d] authority, dominion or control" over the firearm. The instruction was correct and the evidence amply supported a finding that Mercado possessed the firearm within the meaning of § 922(g).

### III.

■ Finally, we turn to Mercado's *Booker* sentencing challenge. At sentencing, the district court calculated under the then-mandatory Guidelines that Mercado had a base offense level of 24 and a Category VI criminal history. Although the Guidelines sentencing range was 100 to 125 months, his sentence was capped by statute at ten years. The court imposed the maximum sentence available, 120 months in prison followed by three years of supervised release. Mercado asserts for the first time on appeal that this sentence was erroneous under the Supreme Court's recent decision in *Booker* and that he is entitled to resentencing.

Because Mercado failed to preserve his sentencing claim below, our review is for plain error. *United States v. Antonakopoulos,* 399 F.3d 68, 75 (1st Cir.2005). A defendant sentenced under the mandatory Guidelines has established that there is an error and that it is clear, the first two requirements of plain error review. *See id.* To be entitled to resentencing, however, a defendant must also "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to [him] under the new 'advisory Guidelines' *Booker* regime." *Id.* Elaborating on this standard in *United States v. Heldeman,* 402 F.3d 220, 224 (1st Cir.2005), we explained that "we are not inclined to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines."

As evidence of a "reasonable indication" that the judge would have sentenced him differently under an advisory regime, Mercado emphasizes that post-*Booker,* courts must consider "the need for the sentence imposed . . . to provide the defendant with . . . correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2).

He asserts that if the court had not been bound to sentence him to a term of imprisonment under the mandatory Guidelines,[4] it might have imposed a different sentence tailored to address Mercado's drug addiction—for example, a shorter prison term followed by time in a drug rehabilitation program or halfway house.

This theoretical possibility is insufficient to meet Mercado's burden as set forth in *Antonakopoulos* and *Heldeman*. The court emphasized at sentencing that Mercado had 17 criminal history points, "well beyond the 13 that places someone in ... the highest criminal history category under the Guidelines," and noted that, but for the statutory cap, Mercado's criminal history "might well have provided a basis for the court to depart upward." The court also stressed Mercado's history of violence, including "us[ing] a weapon on his girlfriend." In explaining its decision to sentence Mercado to the statutory maximum of 120 months in prison, the court concluded:

> Mr. Mercado, I don't believe in sending people to prison for long periods of time unless there's a very good reason to do it, and in your case I believe there is a very good reason to do it. You are a dangerous person.... You've gotten break after break after all of these offenses, and yet at the age of 32 you're hanging around the housing projects at night with a loaded gun. In your case, I think a sentence at the high end of the range is warranted because I have to protect the people out there from you because I can't trust you to do it.

You've had all the chances that you're going to get.

Given these statements, together with Mercado's criminal history, "there is no reasonable probability that [the court] would have imposed a lesser sentence under the *Booker* rubric." *United States v. Carpenter*, 403 F.3d 9, 14 (1st Cir.2005). Mercado is therefore not entitled to resentencing.

***Affirmed.***

---

**4.** Mercado's base offense level of 24 and his Category VI criminal history place him solidly in Zone D of the Guidelines Sentencing Table. Section 5C1.1(f) of the Guidelines requires that for defendants in Zone D, "the minimum term shall be satisfied by a sentence of imprisonment." Under the mandatory Guidelines,

therefore, the court had to sentence Mercado to at least 100 months (the bottom of the Guidelines sentencing range) in prison, as opposed to time in a drug treatment center or other form of community confinement. *See* U.S.S.G. § 5C1.1, cmt. n. 8.