# United States Court of Appeals

## For the First Circuit

No. 01-2515

DONALD DOLINGER,

Petitioner, Appellant,

v.

TIMOTHY HALL,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

Nona E. Walker, with whom Committee for Public Counsel Services, Public Defender Division, was on brief for petitioner.
William J. Meade, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief for respondent.

September 4, 2002

**CYR, <u>Senior Circuit Judge</u>**.  Appellant Donald Dolinger seeks to set aside a district court judgment which dismissed the habeas corpus petition in which he claimed that his criminal convictions for child rape under Massachusetts law were obtained in violation of the Confrontation Clause.  <u>See</u> U.S. Const. amends. VI, XIV.  We affirm the district court judgment.

**I**

**<u>BACKGROUND</u>**

The record on appeal reflects that in early 1993 Dolinger's putative fourteen-year-old victim ("Jonathan Doe")[1] allegedly had begun having oral and anal intercourse three to four times a week with an even younger boy.  During the summer of 1993, Dolinger's wife, Robin, complained to Jonathan Doe's mother that Jonathan had kissed the Dolinger's minor daughter, yet there is no evidence that Dolinger himself ever learned of the alleged "kissing incident."

Dolinger and Jonathan Doe met for the first time in the fall of 1993, when Dolinger hired Doe to assist him with various maintenance and renovation jobs.  Shortly thereafter, as a "Christmas gift," Dolinger hired a female prostitute to perform fellatio on Jonathan, who subsequently told Dolinger that he had not enjoyed the experience because he was "bisexual."  During the

---

[1]The pseudonym "Jonathan Doe" is used simply to protect the identity of the victim.

ensuing months, Dolinger and Doe mutually engaged in acts of fellatio. On one such occasion, Dolinger inquired whether Doe would allow Dolinger to "poke" him. Upon being asked by Doe what "poke" meant, Dolinger explained: "That's where I put my penis in your bum." Although Doe verbally agreed, he soon began to cry, telling Dolinger to stop because it hurt. Dolinger initially refused, then relented.

Early in 1994, Dolinger made a remark which caused Jonathan to cry, though by the time of the March 1996 trial Jonathan could not recall what Dolinger had said which upset him. At about the same time, Jonathan's mother reported to her therapist that Jonathan's behavior had become belligerent and erratic.

Following the ensuing police investigation, eleven counts of child rape were lodged against Dolinger. See Mass. Gen. Laws Ann. ch. 265, § 23.[2] At trial, the defense contended that Dolinger had never engaged in any sexual relations with Jonathan.[3] Additionally, in an effort to impeach the trial testimony of the then seventeen-year-old Jonathan — to the effect that he was sexually naive at the time of the rapes, viz., unfamiliar with such concepts as "bisexuality," "oral sex," and "anal sex" — Dolinger

---

[2]The Massachusetts child-rape statute makes it a crime "unlawfully [to] ha[ve] sexual intercourse or unnatural sexual intercourse, and abuse[] a child under sixteen years of age." Mass. Gen. Laws Ann. ch. 265, § 23.

[3]Dolinger elected not to testify.

3

unsuccessfully sought to adduce evidence regarding Jonathan's earlier homosexual relationship with the younger boy. Citing the Massachusetts rape-shield statute, Mass. Gen. Laws Ann. ch. 233, § 21B,[4] the trial court ruled that, whatever its relevance, the proffered evidence was "well overshadowed . . . [by its] prejudicial effect." Ultimately, the jury convicted Dolinger on eight of the eleven child-rape charges.

On direct appeal, Dolinger contended that the trial court's evidentiary ruling infringed his Sixth Amendment right to cross-examine Doe in order to test the credibility of Doe's

---

[4]The Massachusetts rape-shield statute provides, in pertinent part:

> Evidence of the reputation of a victim's sexual conduct shall not be admissible in any investigation or proceeding before a grand jury or any court of the commonwealth for a violation of [Mass. Gen. Laws Ann. ch. 265, § 23]. Evidence of specific instances of a victim's sexual conduct in such an investigation or proceeding shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not.

Mass. Gen. Laws Ann. ch. 233, § 21B.

testimony to the effect that he had been sexually naive in 1993-94 when the alleged rapes occurred. Dolinger reasons that had the jury determined that Doe lied regarding his naiveté, it may also have found that Doe was fabricating the central trial testimony that he had been raped by Dolinger.

In due course, the Massachusetts Appeals Court affirmed the Dolinger convictions. See Commonwealth v. Dolinger, No. 97-P-558 (Mass. App. Ct. Mar. 6, 1998) (unpublished opinion). First, it rejected Dolinger's contention that the excluded evidence would have explained how Doe had acquired his sexual knowledge, thereby affirming the trial court observations that (i) "it strain[ed] credulity that a fifteen-year old wouldn't know about anal and oral sex," and (ii) Doe's "consensual" homosexual relationship with the younger boy bore little similarity to Doe's relationship with Dolinger. Id. at 2 (citing Commonwealth v. Ruffen, 507 N.E.2d 684, 687-88 (Mass. 1987) ("If the [ten-year-old] victim had been sexually abused in the past in a manner similar to the abuse in the instant case, such evidence would be admissible at trial because it is relevant on the issue of the victim's knowledge about sexual matters.") (emphasis added)).

Second, the Appeals Court rejected Dolinger's contention that, even assuming fifteen-year-olds normally would be knowledgeable regarding the sexual matters at issue, the prosecution had gone out of its way to portray Doe as a sexual

5

neophyte before the jury. In addition, the Appeals Court noted that the jury had not been invited to infer that Doe either possessed "unusual knowledge or [an] unusual lack of knowledge about sex." Id. at 3.

Moreover, the Appeals Court rejected Dolinger's claim that the trial court abused its discretion in ruling that the relevance of the excluded evidence was not outweighed by its potential prejudice to Doe, particularly since the evidence of Doe's prior homosexual relationship with the younger boy tended directly to undermine Doe's overall credibility regarding his sexual naiveté (e.g., Doe's testimony that he did not understand what Dolinger had meant by the word "poke"), thereby inviting the jury to infer that Doe may have fabricated the rape charges against Dolinger as well. Finally, the Appeals Court ruled that the prosecution had not attempted to establish that Doe was sexually naive, but merely that he was "an emotionally and financially needy child," and, in addition, that Dolinger had been able to present other impeachment evidence to the jury, viz., Doe's prior inconsistent statements that (i) Dolinger had raped him every day, and (ii) Dolinger had raped him only on the eleven occasions alleged in the indictment. Id. at 4 & n.3.

After the Massachusetts Supreme Judicial Court summarily rejected the Dolinger application for further appellate review, see Commonwealth v. Dolinger, 695 N.E.2d 667 (1998), the United States

6

District Court for the District of Massachusetts denied the ensuing petition for habeas corpus relief, see 28 U.S.C. § 2254, then issued its certificate of appealability.

## II

## DISCUSSION

The district court order denying the petition for habeas corpus is subject to de novo review. See Almanzar v. Maloney, 281 F.3d 300, 303 (1st Cir. 2002). Additionally, Dolinger is entitled to relief only if we determine that the adverse decisions reached by the Commonwealth courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[5]

---

[5]Dolinger also contends on appeal that the determinations of fact made by the Commonwealth courts were unreasonable. See 28 U.S.C. § 2254(d)(2) (requiring habeas relief where state court issues decision "based on an unreasonable determination of the facts in light of the evidence presented"). But see Mastracchio v. Vose, 274 F.3d 590, 598 (1st Cir. 2001) (noting that findings of fact made by state courts are entitled to a presumption of correctness which can be rebutted only by "clear and convincing" evidence); 28 U.S.C. § 2254(e). Subsection 2254(d)(2) applies exclusively to determinations of "'basic, primary, or historical facts,'" however, Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001) (citation omitted), not to mixed questions of fact and law, which are more amenable to analysis under section 2254(d)(1). See Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002). Since the issue as to whether the trial court violated Dolinger's rights under the Confrontation Clause presents a mixed question of law and fact, see, e.g., Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000), we need not address the Dolinger contention predicated on subsection 2254(d)(2).

7

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

The parties are in agreement that Olden v. Kentucky, 488 U.S. 227 (1988), provides the controlling Supreme Court confrontation-clause precedent.  Olden, an African-American male, was charged with sodomizing a white female.  During trial, the court rejected an evidentiary proffer by the defense — viz., that the alleged victim was living with another African-American male at the time of trial — notwithstanding the victim's inconsistent trial testimony that she had been living with her mother.  Id. at 229-30. Despite the impeachment value inherent in the defense proffer, the trial court reasoned that the jury might harbor a racial bias which could prompt it unfairly to hold the victim's current interracial relationship against her.  Id. at 232.

The Supreme Court reversed the Olden conviction, id. at 233, explaining that "[w]hile a trial court may, of course, impose

8

reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant,' the limitation here was beyond reason, [and amounted to] [s]peculation as to the effect of jurors' racial biases." Id. at 232; see also Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("'[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (citation omitted). Further, the Supreme Court concluded that the erroneous evidentiary ruling was not harmless. Olden, 488 U.S. at 233.

Turning now to the "contrary to" clause in 28 U.S.C. § 2254(d)(1), we cannot conclude that the Appeals Court came to "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or . . . decide[d] [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. For one thing, although the legal rule announced in Olden delineates a nonexclusive list of criteria which may inform trial court evidentiary rulings under the Confrontation Clause (e.g., harassment), these criteria are not susceptible to bright-line definition, but rather require that the trial court apply a case-

9

and-fact-specific balancing test. Furthermore, as our case summary demonstrates, the facts in <u>Olden</u> are in no sense "materially indistinguishable" from those in the present case. For instance, Olden asserted the defense of consent, whereas no such defense is available under the Massachusetts child-rape statute, <u>see</u> <u>supra</u> note 2, and unlike the Dolinger proffer, the <u>Olden</u> proffer was not barred by the state rape-shield law.

As the Appeals Court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions," we need only inquire as to whether it "unreasonably applie[d] that principle to the facts." <u>Williams</u>, 529 U.S. at 412-13. It is clear that the Appeals Court appropriately focused its determination on the components of the <u>Olden</u> analysis most pertinent to the Dolinger proffer excluded below, by balancing (i) its degree of relevance; (ii) its potential to cause unfair prejudice to Doe; and (iii) the extent to which the proffer was repetitive or duplicative of other available impeachment evidence.

## A. <u>Relevance</u>

On appeal, Dolinger contends that the proffer made before the trial court was relevant to (i) whether Jonathan Doe perjured himself when he testified that he had been sexually naive in 1993-94, thus making it more likely that he had fabricated the child rape accusations as well; (ii) whether Doe wanted revenge against Dolinger, who in early 1994 angrily had confronted him about the

10

"kissing incident" involving Dolinger's minor daughter; and (iii) whether Doe was sufficiently sophisticated to understand that Dolinger would be arrested and prosecuted if Doe were falsely to accuse Dolinger of child rape.

Like the trial court, the Appeals Court reasonably recognized that this evidence was relevant to impeach Jonathan Doe on the issue relating to his sexual naiveté. Dolinger, No. 97-P-558, at 4 (Mass. App. Ct. Mar. 6, 1998) ("[Doe's] testimony displays a certain unsureness about oral and anal sex, and . . . testimony as to [Doe's] prior acts with another might have the tendency to impeach the witness."). Doe testified that, in December 1993, when Dolinger asked whether he had enjoyed his experience with the female prostitute, Doe replied that he had not, because he thought he was bisexual. Similarly, Doe testified that he did not understand what Dolinger meant by the term "poke," and had not understood it until Dolinger defined it for him. See supra at p. 3.

On the other hand, the Appeals Court reasonably discounted the relevance of the proffer relating to the "revenge" theory as propounded by Dolinger. First, although the defense maintained that Dolinger had confronted Doe in early 1994 about the "kissing incident," Doe testified that he could not remember the reason for the confrontation. More importantly, Doe's prior homosexual relationship with a younger boy at most would tend to

11

show Doe's precocious understanding regarding sexual mechanics, rather than demonstrate his awareness that an allegation that an adult had raped a child could be used as a weapon of revenge. Dolinger, No. 97-P-558, at 5 (Mass. App. Ct. Mar. 6, 1998).

Accordingly, we conclude that the Commonwealth courts appropriately evaluated the materiality and relevance of the Dolinger proffer.

## B. Prejudice

Next, Dolinger contends that (i) the Massachusetts rape-shield statute precludes evidence of a victim's predisposition to sexual promiscuity, unless independently relevant to the victim's biases, see Commonwealth v. O.C Houston, 722 N.E.2d 942, 945 (Mass. 2000); and (ii) in all events the protections afforded under the rape-shield statute cannot trump the Confrontation Clause.

The Appeals Court recognized that the analyses required under Olden and the Massachusetts rape-shield statute are not incompatible, but rather that each requires a similar balancing of competing factors. The rape-shield statute establishes a rebuttable presumption that evidence of a victim's alleged sexual promiscuity would be prejudicial to the rape victim, see Mass. Gen. Laws Ann. ch. 233, § 21B ("Evidence of the reputation of a victim's sexual conduct shall not be admissible . . . provided, however, that such evidence shall be admissible only after an in camera hearing [at which] . . . the court finds that the weight and

12

relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim."), since it seriously intrudes upon his privacy and threatens to permit the jury unfairly to extrapolate, from the victim's prior consensual sexual acts, his consensual participation in the crime charged. See Houston, 722 N.E.2d at 945; see also Michigan v. Lucas, 500 U.S. 145, 149 (1991) (holding that rape-shield evidentiary exclusions are not per se Sixth Amendment violations, because, depending on the facts of the case, an exclusion may serve legitimate State interests in protecting victim); Stephens v. Miller, 13 F.3d 998, 1002 (7th Cir. 1994) (observing that rape victims "deserve heightened protection against . . . unnecessary invasions of privacy"); cf. Fed. R. Evid. 412.

Echoing the rape-shield statute, Olden likewise contemplates that the trial court should weigh factors such as the potential for "harassment, prejudice, [and] confusion of the issues." Olden, 488 U.S. at 232. Thus, it is hardly an unreasonable application of Olden to conclude, in light of the potential for substantial jury confusion, that trial courts should first find compelling reasons before setting aside the presumption of nonadmissibility, particularly where, as here, the prejudice and harassing cross-examination proffered is to be inflicted upon a victim who is a minor. Accord, e.g., Quinn v. Haynes, 234 F.3d 837, 850 (4th Cir. 2000) (observing that state court appropriately

13

considered minor victim's age and emotional susceptibility in determining whether to admit evidence of prior sexual conduct).

## C.    Redundancy

Dolinger maintains that no redundancy would have resulted had the trial court admitted his excluded proffer along with the other impeachment evidence.  He contends that (i) Doe's motive to frame him, by way of revenge, was not strongly established by the other evidence admitted in the trial court — i.e., that Dolinger had confronted Doe in early 1994 regarding the "kissing incident" — since Doe testified that he could not remember what Dolinger had said to him during that confrontation, and the jury therefore could infer no concrete motive for Doe's revenge; and (ii) evidence that Doe previously had told his counselor that Dolinger raped him every day, instead of on the eleven occasions charged in the indictment, merely demonstrated Doe's predisposition to exaggerate facts, rather than a predisposition to fabricate events (i.e., the rapes) out of whole cloth.  On the other hand, however, given the level of prejudice threatened by the Dolinger proffer, it was not unreasonable for the state courts to determine that Dolinger had been accorded an adequate opportunity to challenge Doe's bias and truthfulness in other meaningful ways.

First, whether or not the "kissing incident" constituted the motive for Doe's alleged revenge is largely immaterial.  The jury was presented with evidence that Dolinger had confronted Doe

angrily a few days before Doe made the rape accusations, and in fact had made Doe cry.  We think that this evidence, if accepted by the jury, was itself sufficient to support the defense theory that Doe had framed Dolinger out of revenge.  See, e.g., Stephens, 13 F.3d at 1002 (noting that the defendant adduced evidence that "he said something to [his victim] that angered her and caused her to fabricate the attempted rape charge," but trial court properly excluded further lurid details of the victim's past sexual conduct "to avoid embarrassing her and subjecting her to possible public denigration").

Second, as concerns the prior inconsistent statement by Doe, in the present context we perceive no significant distinction between Doe's predispositions to exaggerate and to lie, since each strongly suggests his tendency to speak untruthfully:  whether regarding the occurrence of the rapes or their frequency.  Thus, we conclude that it was not beyond the realm of reason for the Commonwealth courts to determine that the Dolinger proffer was largely cumulative.[6]

---

[6]Of course, Confrontation Clause claims are subject to "harmless error" analysis as well.  See Olden, 488 U.S. at 232:

> "The correct inquiry is whether, assuming that the damaging potential of the cross-examination [or excluded evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.  Whether such error is harmless in a particular case depends upon a host of factors, all readily accessible to

Under section 2254(d)(1), it is immaterial whether we would assess the <u>Olden</u> factors as the Commonwealth courts have done in the instant case had we been directly presented with these issues in a non-habeas context. Of necessity, a balancing test normally occasions an exercise of the trial court's informed discretion. <u>See</u> <u>Domaingue</u> v. <u>MacDonald</u>, 978 F. Supp. 53, 58 (D. Mass. 1997) (upholding discretionary exclusion of evidence of incest victim's alleged prior sexual promiscuity, given that trial court otherwise afforded defendant "a reasonable opportunity to question the witness' veracity and motivation," and to present "a reasonably complete picture of the witness's bias") (citing <u>United States</u> v. <u>LaBoy-Delgado</u>, 84 F.3d 22, 28 (1st Cir. 1996)). Thus, it is sufficient that we are able to conclude that the Commonwealth courts "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions [<u>viz.</u>, the <u>Olden</u> factors]," "appl[ied] that principle to the facts of the . . . case," and reasonably balanced the competing factors. <u>Williams</u>, 529 U.S. at 412-13.

reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was <u>cumulative</u>, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

<u>Id.</u> at 232-33 (citation omitted) (emphasis added).

16

**AFFIRMED**.