# United States Court of Appeals

## For the First Circuit

No. 03-2180

UNITED STATES OF AMERICA,

Appellee,

v.

RANDOLPH CARPENTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

James M. Fox for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Dulce Donovan, Assistant United States Attorney, were on brief for appellee.

March 29, 2005

**CYR**, <u>Senior Circuit Judge</u>.  Defendant Randolph Carpenter appeals from the judgment of conviction and sentence entered by the district court.  While on patrol in November 2001, two Providence police officers stopped a speeding vehicle driven by Carpenter. When one of the officers walked up to the passenger-side window of the vehicle, he observed Carpenter was holding a handgun. Carpenter promptly sped off, and the police pursued a high-speed chase, which abruptly ended when Carpenter then ran into a jersey barrier.  Carpenter fled on foot, then crossed a busy interstate highway, where he was apprehended and arrested.  The police discovered the handgun on the passenger seat of Carpenter's vehicle, and seized a small bag of marijuana.  After waiving his <u>Miranda</u> rights in writing, Carpenter admitted that he had bought the handgun for protection two weeks earlier from one Dennis Morrow.

In due course, Carpenter was indicted for possessing a firearm following a felony conviction, <u>see</u> 18 U.S.C. § 922(g), which requires proof of the following elements:  (i) the defendant is a convicted felon; (ii) who knowingly possessed a firearm; and (iii) the firearm was in or affected interstate commerce.  <u>See</u> <u>United States</u> v. <u>Liranzo</u>, 385 F.3d 66, 69 n.2 (1st Cir.), <u>cert.</u> <u>denied</u>, 125 S. Ct. 637 (2004).  Carpenter stipulated to the first and third elements of the offense, preserving for trial solely the issue as to whether he had actual or constructive possession of the

firearm seized from the vehicle which he was driving. See id. Actual possession may be established, inter alia, with evidence that the defendant had either an ownership or a possessory interest in the firearm, whereas constructive possession can be based upon evidence that the defendant knowingly had the ability, as well as the intent, to exercise dominion and control over either the firearm, or the area wherein the firearm was located. See United States v. Carlos Cruz, 352 F.3d 499, 510 (1st Cir. 2003), cert. denied, 125 S. Ct. 176 (2004).

At trial, the prosecution presented evidence of actual possession as well as constructive possession, consisting of (i) Officer MacGregor's testimony that he had seen Carpenter holding the gun in his hand at the time of the traffic stop, and (ii) Carpenter's post-arrest confession that he was the owner of the gun. Defense counsel sought to counteract that evidence by contending that the police officers lied, and by noting that no fingerprints had been found on the gun.[1]

The government's constructive possession theory was premised primarily upon the eventual retrieval of the weapon from the passenger-side seat of the vehicle, an area over which Carpenter unquestionably had exercised dominion and control.

---

[1]To counter Carpenter's contention about the absence of fingerprints on the weapon, the government adduced expert testimony to the effect that it is exceedingly difficult to lift viable fingerprints from the surfaces of this particular weapon.

Defense counsel contended that the police had found the gun elsewhere in the car, then planted the gun on the passenger-side seat in an effort to frame Carpenter, and that the government had not established that Carpenter owned the vehicle he was driving (and hence the handgun).

During its deliberations, the jury transmitted a note to the court, inquiring whether "it is possible to find [out] the identity of the owner of the [vehicle]." The court first responded that the government had adduced no evidence as to ownership of the vehicle, then added that "it doesn't matter who the owner was," because "[t]he important thing is that this defendant was driving the car, the vehicle, at the time." After the jury resumed its deliberations, defense counsel objected, contending that the court's supplemental jury instruction improperly prejudiced the defense by suggesting that the jury should not consider a critical component of the defense theory against "constructive possession" – viz., the fact that the government had not adduced evidence as to the identity of the owner of the vehicle. The district court overruled the objection, and the jury subsequently returned its verdict of guilty.

On appeal, Carpenter contends that the district court's jury instruction constitutes an abuse of discretion.[2] We agree

_____

[2]Carpenter does not contend on appeal that the district court erred in instructing the jury that there was no dispute that Carpenter had been driving the vehicle. See, e.g., United States

that it would have done better had the district court simply responded to the specific question posed by the jury – viz., had it instructed that the government had adduced no evidence as to the identity of the vehicle's owner – and refrained from further comment regarding its import vel non. See United States v. Shay, 57 F.3d 126, 134 (1st Cir. 1995) (noting that excluding evidence cannot be considered harmless error where it "went to heart of the defense"); United States v. Ouimette, 753 F.2d 188, 193 (1st Cir. 1985) (same); see also Perez v. United States, 297 F.2d 12, 16 (5th Cir. 1961) (noting that jury instructions should "not unduly emphasize the theory of the prosecution, thereby deemphasizing proportionally the defendant's theory").[3]  Even assuming arguendo that the challenged instruction was erroneous, however, any error was harmless. See United States v. Gray, 199 F.3d 547, 550 (1st Cir. 1999).

> "The correct inquiry is whether, assuming that the damaging potential of the . . . [excluded evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors

v. Sabetta, 373 F.3d 75, 80 (1st Cir.) ("A district court must use extreme caution in answering questions from juries so as not to usurp the jury's fact finding role."), cert. denied, 125 S. Ct. 433 (2004).  Hence, we need not address the matter.

[3]The government has not argued on appeal that Carpenter failed to adduce enough evidence of his defense theory to require its submission to the jury in the first instance.

-5-

> include the importance of the witness' testimony in the prosecution's case, whether the testimony was <u>cumulative</u>, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

<u>Dolinger</u> v. <u>Hall</u>, 302 F.3d 5, 12 n.6 (1st Cir. 2002) (citation omitted). The burden of persuasion rests with the government to demonstrate harmless error, <u>see</u> <u>United States</u> v. <u>Ventura-Cruel</u>, 356 F.3d 55, 64 (1st Cir. 2003), and we may not declare a constitutional error harmless where there is a "reasonable possibility" that it influenced the verdict, <u>see</u> <u>United States</u> v. <u>Mulinelli-Navas</u>, 111 F.3d 983, 992 (1st Cir. 1997).

First, we determine what impact the challenged instruction on the vehicle's ownership may have had on the defense. The ownership issue was relevant both (i) to refuting the government's evidence that Carpenter had constructive possession of the gun, and (ii) to the defense theory that the arresting officers framed Carpenter. More specifically, the defense invited the jury to adopt the following theory of the case: The government did not adduce evidence of the vehicle's ownership because the vehicle did not belong to Carpenter. The gun – which belonged to the owner of the vehicle and of which Carpenter had no prior knowledge – was originally located somewhere in the vehicle, other than on the passenger seat. The police officers did not find the gun until

-6-

they conducted a post-arrest search of the vehicle, and planted it on the vehicle's passenger seat to bolster their perjurious testimony that Carpenter had handled the gun during the initial traffic stop and the car chase.

We conclude that the district court's instruction was harmless, beyond a reasonable doubt, for two principal reasons. First, the court did not instruct the jury to disregard positive evidence that the vehicle did not belong to Carpenter, but rather to disregard the fact that the government introduced no evidence – either way – as to its ownership. Even now, Carpenter makes no contention that he did not own the vehicle. Hence, the jury could only have speculated as to its ownership, surely a dubious launching pad for the attenuated defense theory.

Second, vehicle ownership was simply the prefatory element in the defense theory, and even if the jury were to have assumed from the government's failure of proof that Carpenter did not own the vehicle, it would not have adopted the defense theory without first having made an additional series of attenuated inferences: (i) the gun also belonged to the vehicle's owner, not the vehicle's current user/driver (<u>viz.</u>, Carpenter); (ii) Carpenter neither knew of the gun's presence in the vehicle, nor intended to exercise control or dominion over it; and (iii) the police had not only the <u>opportunity</u> to "frame" Carpenter (<u>viz.</u>, the presence of a "hidden" gun in the vehicle not belonging to Carpenter), but the

-7-

motive. From the verdict, we conclude that the jury decided not to disbelieve the police officers' account of the traffic stop, Carpenter's brandishing of the gun, nor the results of the ensuing vehicle inspection, and that therefore, there is no "reasonable possibility" that the district court's instruction influenced the jury verdict. See Mulinelli-Navas, 111 F.3d at 992.

Carpenter's undisputed conduct tended to belie any defense contention that he did not know the gun was in the car. Besides the gun, the only incriminating evidence seized from the vehicle was a small amount of marijuana, and the jury would have had to draw the implausible inference that Carpenter recklessly would have fled a traffic stop, run from his wrecked vehicle, and engaged the police in a life-threatening foot pursuit across a busy interstate highway, all to avoid relatively minor drug possession charges. See United States v. Otero-Mendez, 273 F.3d 46, 53 (1st Cir. 2001) ("'Evidence of a defendant's flight . . . may be presented at trial as probative of a guilty mind if there is an adequate factual predicate creating an inference of guilt of the crime charged.'") (emphasis added; citation omitted). The desperation of Carpenter's flight affords persuasive support for the inference that he knowingly possessed the handgun.

Any putative instructional error was harmless in light of the overall strength of the government's case. See Dolinger, 302 F.3d at 12 n.6. The vehicle's ownership was relevant only to the

constructive possession issue, not actual possession, and the detail and consistency of the police officers' accounts vouched for their credibility.  See, e.g., United States v. Salimonu, 182 F.3d 63, 71 (1st Cir. 1999) (noting that witnesses' testimony was "detailed and basically consistent," affording the jury "substantial evidence of [defendant's] guilt").  For example, Officer MacGregor testified, that Carpenter did not put his vehicle into park when he was pulled over (viz., "[t]he reverse lights did not flicker on"), which suggested to MacGregor that Carpenter might drive away while MacGregor walked up to his vehicle.  MacGregor described how Carpenter was looking back in his side-view mirror at the parked police cruiser, and how the gun that he observed in Carpenter's hand was "black, unique," "an old style gun" which "had two round cylinders in the rear." He testified that, when he made eye contact with Carpenter, Carpenter looked "startled," and immediately sped off.  Finally, the account given by MacGregor's fellow officer, Sion, is entirely consistent with that provided by MacGregor.  If the jury credited this testimony, the ownership of the vehicle was comparatively irrelevant.[4]

---

[4]We can ascribe no conclusive significance to the fact that the jury chose to ask this particular question.  Although Carpenter argues that this demonstrates that the jury had rejected the government's evidence of actual possession, and was considering an acquittal with respect to constructive possession, it is no less plausible that the jury had decided that the government had proven actual and/or constructive possession beyond a reasonable doubt, and inquired about the vehicle's ownership merely to determine whether that evidence was adduced at trial and if so, was

The government also adduced evidence of Carpenter's post-arrest oral confession that he had purchased the gun two weeks earlier.[5]  His confession was quite detailed (viz., including the name of the person from whom he bought the gun, and his need for the gun), and it is entirely reasonable to conclude that the jury would accord it considerable weight in determining the issue of possession.  See Arizona v. Fulminante, 499 U.S. 279, 296 (1991) ("'[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . Certainly, confessions have a profound impact on the jury.'") (citation omitted); Ventura-Cruel, 356 F.3d at 64 ("'Confessions are by nature highly probative and likely to be at the center of the jury's attention.'") (citation omitted); Lufkins v. Leapley, 965 F.2d 1477, 1482 (8th Cir. 1992) (finding trial error harmless on the ground that "[a] detailed confession is the most probative of all evidence. . [and] a full confession by a defendant has an extraordinary impact on a finder of fact").  Although Carpenter did not sign a written confession, given its detail, the jury likely

consistent with its decision to convict.

[5]Notwithstanding the fact that police gave Carpenter Miranda warnings before he confessed, he attempted to argue at trial that the police beat him after his arrest, thus inviting an inference that his confession might have been coerced. See, e.g., United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004). Not only does the record contain no evidence supporting this argument, the government adduced hospital records reflecting that Carpenter bore no indication of having been the victim of a post-arrest beating.

credited the testimony of the police officer who took the oral confession. See United States v. Flores, 63 F.3d 1342, 1377 (5th Cir. 1995) ("When the evidentiary value of an out-of-court confession depends on the credibility of the officer who repeats it, the court correctly allows the jury to make this call.").

The defense does not contend – let alone adduce any evidence – that the vehicle belonged to someone other than Carpenter, nor that the facts elaborated in his oral confession were the product of a police fabrication. Accordingly, we conclude that any error in the district court instruction was harmless.

Carpenter further argues that the district court plainly erred by imposing a sentence which violates the recent decision in United States v. Booker, 125 S. Ct. 738 (2005), which held that the Sentencing Guidelines are advisory rather than mandatory. See United States v. Antonakopoulos, 399 F.3d 68, 74 (1st Cir. 2005). We review his argument for plain error, and it is his burden to demonstrate that he was prejudiced by the district court sentence, in that there is a "reasonable probability" that the court would have imposed a lesser sentence if the sentence had been after Booker, viz., if the district court had known that the Guidelines did not mandate the sentence it imposed. See id. at 75. Carpenter cannot satisfy this burden. The district court stated at sentencing:

> This defendant is a danger to the
> community. . . . I give him the longest

> sentence I can give him for the protection of
> society.  In this case it's ten years, 120
> months, to be served consecutively to the
> state sentences he is now serving.  I don't
> think I have discretion to do otherwise.  <u>Even
> if I did, this is what I would do in order to
> separate him from society</u>.

(Emphasis added.)  The district court thus made clear that there is no reasonable probability that it would have imposed a lesser sentence under the <u>Booker</u> rubric.  <u>See</u> <u>Antonakopoulos</u>, 399 F.3d at 81 ("[I]f the district judge has said at sentencing that he would have reached the same result regardless of the mandatory nature of the Guidelines, that is a powerful argument against remand.").  As Carpenter could gain nothing from a <u>Booker</u> remand, the sentence properly imposed by the district court must be affirmed.

**<u>Affirmed</u>**.