CYR, Senior Circuit Judge
(Concurring).
The admission into evidence of the Coker confession violated the Sixth Amendment right to have counsel present during the post-indictment interview. I would affirm on the ground that the violation was harmless beyond a reasonable doubt. I write separately, since I am unable to agree with the panel decision that no Sixth Amendment violation occurred, and I am concerned that its alternate holding may invite serious precedential consequences. See California v. United States, 438 U.S. 645, 689 n. 10, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978) (stating that court’s alternate holdings are not obiter dicta, but have full precedential effect); Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm’n, 216 F.3d 1180, 1189 (D.C.Cir.2000) (same).
Prior to Cobb, there was no question but that the “separate sovereign” doctrine, pursuant to which federal and state prosecutions for the same offense were not deemed offensive to the Fifth Amendment double jeopardy clause, had no application outside the double jeopardy context. For instance, the separate sovereign doctrine neither applies to the Fourth Amendment protection from unreasonable searches and seizures, see Elkins v. United States, 364 U.S. 206, 208, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (“[Ajrticles obtained as a result of an unreasonable search and seizure by *50 state officers, without involvement of federal officers,” cannot “be introduced in evidence against a defendant over his timely objection in a federal criminal trial”), nor to the Fifth Amendment privilege against self-incrimination, see Murphy v. Waterfront Comm’n of N.Y. Harbor, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (stating that the policy reasons underlying the self-incrimination prohibition are “defeated when a witness can be whipsawed into incriminating himself under both state and federal law even though the constitutional privilege against self-incrimination is applicable to each”). Elkins and Murphy wisely recognized that allowing the separate sovereign doctrine to operate in the context of these important constitutional protections would encourage collusion between the federal and state sovereigns, one sovereign obtaining evidence in violation of defendants’ constitutional rights, then passing the evidence on a “silver platter” to the other sovereign, which would then be free to utilize the tainted evidence in its own prosecution with no risk of suppression. Elkins, 364 U.S. at 208, 80 S.Ct. 1437. Obviously, no comparable policy concerns regarding evidence-gathering are presented in the double jeopardy context.
Read properly, Cobb does not compel the anomaly which the majority now countenances, viz., permitting federal and state authorities to violate a defendant’s Sixth Amendment right to counsel where they are prohibited from undertaking similar collusive actions with respect to Fourth Amendment and Fifth Amendment rights. Indeed, the Sixth Amendment right to counsel has been long recognized as among the constitutional protections most critical to ensuring the conduct of fair criminal trials. See Massiah v. United, States, 377 U.S. 201, 205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Gideon v. Wainwright, 372 U.S. 335, 343-44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Johnson v. Zerbst, 304 U.S. 458, 462-63, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In Cobb, the federal government was not involved. Rather, the State indicted Cobb for burglary, later interrogated him, without the aid of counsel, concerning a murder committed during that burglary, and used his incriminating statements during that post-indictment interview to indict him for that murder. On appeal, the question was whether the burglary and murder were the same “offense.” Although some courts had devised a test which considered two crimes the same if they were factually related (e.g., committed on the same day), the Court imported the Blockburger test from the double jeopardy definition of “offense,” and held that two offenses are not the same for Sixth Amendment purposes if each requires proof of a fact that the other does not. Cobb, 532 U.S. at 173, 121 S.Ct. 1335. It was in this straitened context that the Court stated that “[w]e see no constitutional difference between the meaning of the term ‘offense’ in the contexts of double jeopardy and of the right to counsel.” Id.
Here, there is no question but that Coker was questioned after his indictment regarding the “same offense,” and under Cobb and the Blockburger test, his Sixth Amendment right to counsel had attached. In order to find otherwise, one must assume that the Court held that, the particular facts of the case before it notwithstanding, it meant to decide that henceforth there would be no conceivable differences between the term “offense” in the double jeopardy and Sixth Amendment contexts. The Court in Cobb did not even consider the policy issues raised in Elkins and Murphy, for a simple reason: the case before it did not involve separate sovereigns.
‘If there is one doctrine more deeply rooted than any other in the process of *51 constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.’ ... It has long been the Court’s ‘considered practice not to decide abstract, hypothetical or contingent questions ... or to decide any constitutional question in advance of the necessity for its decision ... or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied ... or to decide any constitutional question except with reference to the particular facts to which it is to be applied.’
Clinton v. Jones, 520 U.S. 681, 690 n. 11, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citations omitted). Especially in light of Elkins and Murphy, and their focus upon the important policy of preventing collusive end-runs around constitutional safeguards, there remains considerable doubt whether the Court, if and when confronted with a separate sovereign case, would hold that the Sixth Amendment right to counsel should be treated less cordially than the Fourth and Fifth Amendment rights, absent some compelling reason for doing so. See United States v. Mills, 412 F.3d 325, 329-30 (2d Cir.2005) (holding that Cobb did not intend to import separate sovereign doctrine into Sixth Amendment context); cf. United States v. Red Bird, 287 F.3d 709, 715 (8th Cir.2002) (refusing to apply separate sovereign doctrine to Sixth Amendment right to counsel in joint federal-tribal crime investigation).
These policy concerns cannot be fully assuaged simply by resort to the Bartkus exception to the separate sovereign doctrine in the double jeopardy context, since it is “limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in the proceedings.” United States v. Guzmán, 85 F.3d 823, 827 (1st Cir.1996). Obviously, this leaves out much of the mutual collusion of independent sovereigns which is the subject of Elkins and Murphy, and creates a portentous risk of abuse in this age of increasing federal-state cooperation. See United States v. Martinez, 972 F.2d 1100, 1105 (9th Cir. 1992). I see no principled reason that the Sixth Amendment right to counsel ought to be subject to the separate sovereign doctrine when the Fourth Amendment and Fifth Amendment self-incrimination rights are not.
Nor can I agree with my colleague’s co-concurrence, which finds this overly broad interpretation of Cobb consonant with the Court’s decisions not unnecessarily to thwart police investigations of crime, for the argument improperly demotes Sixth Amendment protection from substance to mere form, and overlooks the countervailing policy interests discussed in Elkins and Murphy. The Sixth Amendment right to counsel already has built-in safeguards: the right can be invoked only for the offense for which defendant is under indictment, not for “new or additional crimes,” Maine v. Moulton, 474 U.S. 159, 179, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and “cannot be invoked once for all future prosecutions,” McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The rationale advocated by the co-concurrence would render Sixth Amendment protections essentially meaningless, subject to the most blatant and irremediable manipulation. See Cobb, 532 U.S. at 168, 121 S.Ct. 1335 (Breyer, J., dissenting) (“The Constitution does not take away with one hand what it gives with the other.”).[12]
*52 For these reasons, I do not join in the alternative holding that the police interview with Coker did not violate his Sixth Amendment right to counsel. At the very least, prudence counsels that we refrain from deciding this difficult and important constitutional issue. See Bellville v. Town of Northboro, 375 F.3d 25, 30 (1st Cir.2004) (“Normally, we endeavor to avoid deciding constitutional issues and attempt to decide cases on the narrowest grounds possible.”). However, I do agree with my colleagues in their alternative holding: that any Sixth Amendment violation was harmless beyond a reasonable doubt. Although I recognize that a confession normally carries great evidentiary heft, see United States v. Carpenter, 403 F.3d 9, 13 (1st Cir.), cert. denied, — U.S. -, 125 S.Ct. 2284, 161 L.Ed.2d 1076 (2005), the other circumstances of this case persuade me that the error was harmless, see, e.g., United States v. Downs-Moses, 329 F.3d 253, 267-68 (1st Cir.), cert. denied sub nom. Ward-O’Neill v. United States, 540 U.S. 916, 124 S.Ct. 305, 157 L.Ed.2d 210 (2003).

. My concurring colleague also advances his Cobb interpretation as affording police offi *52 cers the advantage of a clear bright-line rule, but the same can be said of a rule which does not allow any invocation of the separate sovereign doctrine as a justification for a post-indictment interview concerning the offense of indictment. Be that as it may, clarity has never been the paramount benchmark of constitutional interpretation, which often requires difficult judgment calls by law enforcement officials in the field.